# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>**PLAINTIFF,** | **CASE #: 19-20259** |
| | **HON. DAVID M. LAWSON** |
| **VS.** | |
| **GEMAR MORGAN**<br>**DEFENDANT.** | **MAGISTRATE DAVID R. GRAND** |
| Dawn N. Ison, AUSA (P43111)<br>US Attorney's Office<br>211 W. Fort Street, Suite 2001<br>Detroit, MI 48226<br>(313) 226-9567<br>Email: dawn.ison@usdoj.gov | Margaret Sind Raben (P39243)<br>Gurewitz & Raben, PLC<br>333 W. Fort Street, Suite 1400<br>Detroit, MI 48226<br>(313) 628-4708<br>Email: msraben@aol.com |

### DEFENDANT'S PRO SE CORRECTED SENTENCING MEMORANDUM

Standby counsel for Defendant Gemar Morgan files this Corrected

Sentencing Memorandum because some of the pages Defendant submitted to the

Clerk of the Court had writing on both sides of the paper and inadvertently were

not scanned.



# DEFENCE SENTENCE MEMORANDUM

FIRST OF ALL THE DEFENCE WOULD ASSERT THE (U.S.S.G §5G1.2 - SENTENCING ON MULTIPLE COUNTS OF CONVICTION - NOTE: COMMENTARY · APPLICATION NOTES: THIS SECTION) APPLIES TO MULTIPLE COUNTS OF CONVICTION (A) CONTAINED IN THE SAME INDICTMENT OR INFORMATION, OR (B) CONTAINED IN DIFFERENT INDICTMENTS OR INFORMATIONS FOR WHICH SENTENCES ARE TO BE IMPOSED AT THE SAME TIME & IN A CONSOLIDATED PROCEEDING. SEE (U.S.S.G. CH-3 PART D. MULTIPLE COUNTS (NOTE: IN ORDER TO LIMIT THE SIGNIFICANCE OF THE FORMAL CHARGING DECISION & TO PREVENT MULTIPLE PUNISHMENT FOR SUBSTANTIALLY IDENTICAL OFFENSE CONDUCT, THIS PART PROVIDES RULES FOR GROUPING OFFENSE TOGETHER. CONVICTIONS ON MULTIPLE COUNTS DO NOT RESULT IN A SENTENCE ENHANCEMENT - UNLESS - THE MULTIPLE COUNTS WAS SENTENCE ON DIFFERENT DATES. IN ESSENCE, COUNTS THAT ARE GROUPED TOGETHER ARE TREATED AS CONSTITUTING A SINGLE OFFENSE FOR PURPOSES OF THE GUIDELINES. SEE (ORDER OF PROBATION & ORDER OF CONVICTION AND SENTENCE - WHICH WILL INDICATE THAT EACH COUNT FOR CASE NO. 94-01616 · IS ORDER TO RUN CONCURRENT WITH COUNT NO. 94-01615 AND 94-01832 - RESULTING TO A SINGLE JUVENILE ADJUDICATION AND JUVENILE SENTENCE - WHICH QUALIFY AS A CONSOLIDATED PROCEEDING). THE COURT ORDERS WILL REFLECT THAT THE PLEA ORDER AND SENTENCE ORDER · ALL REFLECT A SINGLE DATE, TIME AND CONSOLIDATED PROCEEDING THAT WAS ORDERED ON THE SAME, DATE & TIME. SEE §4B1.4 OF THE (U.S.S.G - APPLICATION NOTES: IT IS TO BE NOTED THAT THE PROCEDURAL STEPS RELATIVE TO THE IMPOSITION OF AN ENHANCED SENTENCE UNDER 18 U.S.C. §924 (e) ARE NOT SET FORTH BY STATUTE & MAY VARY TO SOME EXTENT FROM JURISDICTION TO JURISDICTION - WHERE AS ACCORDING

③

TO THE APPLICATION NOTES THE "JURISDICTION IN THIS MATTER" WILL BE THE MICHIGAN STATUTES CH. 760-777 PART 5 PRIOR RECORD VARIABLES §777.50 CONVICTION OR JUVENILE ADJUDICATION 10 OR MORE YEARS FROM DISCHARGE AND COMMISSION OF NEXT OFFENSE. (8) IF IT IS 10 OR MORE YEARS, DO NOT USE THAT PRIOR CONVICTION OR JUVENILE ADJUDICATION AND ANY EARLIER CONVICTION FOR A PRIOR CONVICTION VARIABLE. SEE MCL §712A3 CRIMINAL CHARGE AGAINST PERSON UNDER AGE 17; TRANSFER OF CASE TO FAMILY DIVISION OF CIRCUIT COURT. LET LOOK INTO THE CASE MAKER LAW LIBRARIES DEFINITION FOR CONSOLIDATION - A JOINING TOGETHER OF SEPARATE PARTS INTO ONE, SUCH AS A MERGER OR THE JOINING OF COUNTS, CHARGES, OR SUITS TO BE TRIED AS ONE. ALSO LET'S LOOK AT THE DEFINITION OF DISCHARGE - TO DISCHARGE A PERSON HELD ON ACCUSATION OF A CRIME IS TO SET HIM FREE. SEE, JOHNSON V. U.S., 135 S. Ct. 2551 - THE GOVERNMENT VIOLATES THE DUE PROCESS CLAUSE WHEN IT TAKES AWAY SOMEONE'S LIFE, LIBERTY, OR PROPERTY UNDER A CRIMINAL LAW SO VAGUE THAT IT FAILS TO GIVE ORDINARY PEOPLE FAIR NOTICE OF THE CONDUCT IT PUNISHES, OR SO STANDARDLESS THAT IT INVITES ARBITRARY ENFORCEMENT. THE PROHIBITION OF VAGUENESS 135 S. Ct. 2551 IN CRIMINAL STATUTES" IS WELL A WELL- RECOGNIZED REQUIREMENT CONSONANT ALIKE WITH ORDINARY NOTIONS OF FAIR PLAY AND THE SETTLED RULES OF LAW," AND A STATUTE THAT FLOUTS IT "VIOLATES THE FIRST ESSENTIAL OF DUE PROCESS. THESE PRINCIPLES APPLY NOT ONLY TO STATUTE DEFINING ELEMENTS OF CRIMES, BUT ALSO TO STATUTES FIXING SENTENCES. SEE TAYLOR "110 S. Ct. 2143" TAYLOR EXPLAINED THAT THE RELEVANT PART OF THE ARMED CAREER CRIMINAL ACT "REFERS TO A PERSON WHO ... HAS THREE PREVIOUS CONVICTIONS' FOR - NOT A PERSON WHO HAS COMMITTED - THREE PREVIOUS VIOLENT FELONIES OR DRUG OFFENSES." THIS EMPHASIS ON CONVICTIONS INDICATES THAT "



④

CONGRESS INTENDED THE SENTENCING COURT TO LOOK ONLY TO THE FACT THAT THE DEFENDANT HAS BEEN CONVICTED OF CRIMES FALLING WITHIN CERTAIN CATEGORIES, AND NOT THE FACTS UNDERLYING THE PRIOR CONVICTIONS. TAYLOR ALSO POINTED OUT THE UTTER IMPRACTICABILITY OF REQUIRING A SENTENCING COURT TO RECONSTRUCT, LONG AFTER THE ORIGINAL CONVICTION THE CONDUCT UNDERLYING THAT CONVICTION. FOR EXAMPLE, IF THE ORIGINAL CONVICTION RESTED ON A GUILTY PLEA, NO RECORD OF THE UNDERLYING FACTS MAY BE AVAILABLE. "THE ONLY PLAUSIBLE INTERPRETATION" OF THE LAW, THEREFORE REQUIRES THE USE OF THE ENUMERATED CRIMES LISTED WHICH IS (BURGLARY, ARSON, OR EXTORTION, INVOLVES USE OF EXPLOSIVES, SEE THE PROBATIONS OFFICER LETTER MAILED TO (MARGARET RABIEN) ON FEB 4TH, 2020) WHERE THE PROBATION OFFICER MADE CHANGES TO THE (P.S.R), BUT THE PROBATION OFFICER LIED UNDER OATH - WHEN THE JUDGE DAVID LAWSON ASKED - JENNIFER DANUSH - DID SHE MAKE CHANGES TO THE (P.S.R - DATED ON 11/03/20) - AND - JENNIFER DANUSH COMMITTED PERJURY - BECAUSE JENNIFER DANUSH - GAVE THE COURT AN ANSWER THAT REPLIED NO! NOW UPON THE ANSWER NO THE - THE LETTER THAT THE PROBATION OFFICER ENDICE ON (2/4/20) PROVE THAT THE PROBATION OFFICER CREATED CHANGES THAT INVOLVES THE STATUTE (18 U.S.C §924(e)(B)(2)) WHICH REQUIRE THE DEFENSE THE TIME TO PREPARE FOR AN ENTIRE NEW SET OF OBJECTIONS THAT APPLY TO THE (CHANGES THAT WAS IMPLEMENTED IN THE (P.S.R.) SEE 136 S.CE. 2243 - MATHIS V. U.S" - "ELEMENTS" ARE THE CONSTITUENT PARTS OF A CRIME'S LEGAL DEFINITION; WHICH MUST BE PROVED BEYOND A REASONABLE DOUBT TO SUSTAIN A CONVICTION; THEY ARE DISTINCT FROM "FACTS", WHICH ARE MERE REAL-WORLD THINGS-EXTRANEOUS TO THE CRIME'S LEGAL REQUIREMENTS AND THUS IGNORED BY THE CATEGORICAL APPROACH. WHEN



5

A STATUTE DEFINES ONLY A SINGLE CRIME WITH A SINGLE SET OF ELEMENT, APPLICATION OF THE CATEGORICAL APPROACH IS STRAIGHTFORWARD. BUT WHEN A STATUTE DEFINES MULTIPLE CRIMES BY LISTING MULTIPLE, ALTERNATIVE ELEMENTS, THE ELEMENTS REQUIRED BY THE CATEGORICAL APPROACH IS MORE DIFFICULT TO DECIDE WHETHER A CONVICTION UNDER SUCH A STATUTE IS FOR A LISTED ACCA OFFENSE, A SENTENCING COURT MUST DISCERN WHICH OF THE ALTERNATIVE ELEMENTS WAS INTEGRAL TO THE DEFENDANT'S CONVICTION. THAT DETERMINATION IS MADE POSSIBLE BY THE "MODIFIED [195 L. Ed. 2d 608] CATEGORICAL APPROACH," WHICH PERMITS A COURT TOO LOOK AT A LIMITED CLASS OF DOCUMENT FROM THE RECORD OF A PRIOR CONVICTION, TO DETERMINE WHAT CRIME WITH WHAT ELEMENTS, A DEFENDANT WAS CONVICTED OF BEFORE COMPARING THAT CRIME'S ELEMENTS TO [136 S.Ct. 2246] THOSE OF THE GENERIC OFFENSE. THIS COURT HELDS THAT THIS CASE IS RESOLVED BY THIS COURT'S PRECEDENTS, WHICH HAVE REPEATEDLY HELD, AND IN NO UNCERTAIN TERMS, THAT A STATE CRIME CANNOT QUALIFY AS AN ACCA PREDICATE IF ITS ELEMENTS ARE BROADER THAN THOSE OF A LISTED GENERIC OFFENSE. SEE, E.G., TAYLOR, 110 S.Ct. 2143. "THE "UNDERLYING BRUTE FACTS OR MEANS" BY WHICH THE DEFENDANT COMMITS HIS CRIME, RICHARDS V. U.S., 119 S.Ct. 1707, MAKE NO DIFFERENCE: EVEN IF THE DEFENDANT'S CONDUCT, IN FACT, FITS WITHIN THE DEFINITION OF THE GENERIC OFFENSE, THE MISMATCH OF ELEMENTS SAVES HIM FROM AN ACCA SENTENCE. ACCA REQUIRES A SENTENCING JUDGE TO LOOK ONLY TO "THE ELEMENTS OF THE [OFFENSE], NOT TO THE FACTS OF THE DEFENDANTS CONDUCT." TAYLOR, 110 S.Ct. 2143." THIS COURT'S CASES ESTABLISH THREE BASIC REASONS FOR ADHERING TO AN ELEMENTS-ONLY INQUIRY. 1ST, ACCA'S TEXT, WHICH ASKS ONLY ABOUT A DEFENDANT'S "PRIOR CONVICTIONS" INDICATES THAT CONGRESS MEANT FOR THE SENTENCING JUDGE TO ASK ONLY WHETHER "THE DEFENDANT HAD BEEN CONVICTED OF CRIMES



(6)

FALLING WITHIN CERTAIN CATEGORIES," IN., AT 600, 110 S.Ct. 2143, NOT WHAT HE HAD DONE. SECOND, CONSTRUING ACCA TO ALLOW A SENTENCING JUDGE TO GO ANY FURTHER WOULD RAISE SERIOUS 6TH AMENDMENT CONCERNS BECAUSE ONLY A JURY, NOT A JUDGE MAY FIND FACTS THAT INCREASE THE MAXIMUM PENALTY. SEE APPRENDI V. NEW JERSEY, 120 S.Ct. 2348. AND 3RD, AN ELEMENT FOCUS AVOIDS UNFAIRNESS TO DEFENDANTS, WHO OTHERWISE MIGHT BE SENTENCED BASED ON STATEMENTS OF "NON-ELEMENTAL FACTS" THAT ARE PRONE TO ERROR BECAUSE THEIR PROOF IS UNNECESSARY TO A CONVICTION. [DECAMPS V. U.S.-133 S.Ct. 2276 FINALLY, A STATUTE'S LISTING OF DISJUNCTIVE MEANS DOES NOTHING TO MITIGATE THE POSSIBLE UNFAIRNESS OF BASING AN INCREASED PENALTY ON SOMETHING NOT LEGALLY NECESSARY TO A PRIOR CONVICTION. ACCORDINGLY, WHETHER MEANS ARE LISTED IN A STATUTE OR NOT, ACCA DOES NOT CARE ABOUT THEM RATHER, ITS FOCUS, AS ALWAYS, REMAINS ON A CRIME'S ELEMENTS. DISTINGUISHING BETWEEN ELEMENTS AND FACTS IS **THERE**FORE CENTRAL TO ACCA'S OPERATION. "ELEMENTS" ARE THE "**CONSTI**TUENT PARTS" OF A CRIME'S LEGAL DEFINITION - THE THINGS THE "PROSECUTION MUST PROVE TO SUSTAIN A CONVICTION." BLACK'S LAW DICTIONARY 634 (10TH ED. 2014). AT A TRIAL, ELEMENTS ARE WHAT THE JURY MUST FIND BEYOND A REASONABLE DOUBT TO CONVICT THE CONVICT THE DEFENDANT SEE (RICHARDSON V. U.S. 119 S.Ct. 1707. FACTS, **ARE** CONTRAST, ARE MERE REAL-WORLD THINGS - EXTRANEOUS TO THE CRIME LEGAL REQUIREMENTS. THEY ARE "CIRCUMSTANCES" OR "EVENTS" HAVING NO "LEGAL EFFECT OR CONSEQUENCE. BUT IF THE CRIME OF CONVICTION COVERS ANY MORE CONDUCT THAN THE GENERIC OFFENSE, THEN IT IS NOT AN ACCA PREDICATE - EVEN IF THE DEFENDANT'S ACTUAL CONDUCT (I.E., THE FACTS OF THE CRIME) FITS WITHIN THE GENERIC OFFENSE'S BOUNDARIES. SECOND, A CONSTRUCTION OF ACCA ALLOWING A

7

A SENTENCING JUDGE TO GO ANY FURTHER WOULD RAISE SERIOUS SIXTH AMENDMENT CONCERNS. THIS COURT HAS HELD THAT ONLY A JURY, AND NOT A JUDGE, MAY FIND FACTS THAT INCREASES A MAXIMUM PENALTY, EXCEPT FOR THE SIMPLE FACT OF A PRIOR CONVICTION. SEE APPRENDI V. NEW JERSEY; 120 S. Ct. 2348 (200). THAT MEANS A JUDGE CANNOT GO BEYOND IDENTIFYING THE CRIME OF CONVICTION TO EXPLORE THE MANNER IN WHICH THE DEFENDANT COMMITTED THE OFFENSE. SEE SHEPARD, 125 S. Ct. 1254 (THOMAS J., CONCURRING IN PART AND CONCURRING IN JUDGEMENT) (STATING THAT SUCH AN APPROACH WOULD AMOUNT TO "CONSTITUTIONAL ERROR") HE IS PROHIBITED FROM CONDUCTING SUCH AN INQUIRY HIMSELF, AND SO TOO HE IS BARRED FROM MAKING A DISPUTED DETERMINATION ABOUT "WHAT THE DEFENDANT AND STATE JUDGE MUST HAVE UNDERSTOOD AS THE FACTUAL BASIS OF THE PRIOR PLEA" OR "WHAT THE JURY IN A PRIOR TRIAL MUST HAVE ACCEPTED AS THE THEORY OF THE CRIME. SEE ID AT [125 S. Ct. 1254 (PLURALITY OPINION); DECAMPS; 570 U.S. at ___, 133 S. Ct. 2276. HE CAN DO NO MORE, CONSISTENT WITH THE 6TH AMENDMENT, THAN DETERMINE WHAT CRIME, WITH WHAT ELEMENTS, THE DEFENDANT WAS CONVICTED OF. [136 S. Ct. 2253] AND THIRD, AN ELEMENTS-FOCUS AVOIDS UNFAIRNESS TO DEFENDANTS. STATEMENTS OF "NON-ELEMENTAL FACT" IN THE RECORDS OF PRIOR CONVICTIONS ARE PRONE TO ERRORS PRECISELY BECAUSE THEIR PROOF IS UNNECESSARY. Id. at 133 S. Ct. 2276. AT TRIAL AND STILL MORE AT PLEA HEARINGS, A DEFENDANT MAY HAVE NO INCENTIVE TO CONTEST WHAT DOES NOT MATTER UNDER LAW; TO THE CONTRARY, HE "MAY HAVE GOOD REASON NOT TO" OR EVEN BE PRECLUDED FROM DOING SO BY THE COURT. IBID. WHEN THAT IS TRUE, A PROSECUTOR'S OR JUDGE'S MISTAKE AS TO MEANS, REFLECTED IN THE RECORD, IS LIKELY TO GO UNCORRECTED. SEE IBID. SUCH INACCURACIES SHOULD NOT COME BACK TO HAUNT THE DEFENDANT [195 L. Ed. 2d 616] MANY YEARS DOWN THE ROAD BY TRIGGERING

⑧

A LENGTHY MANDATORY SENTENCE, ACCA'S USE OF THE TERM "CON-VICTIONS" STILL SUPPORTS AN ELEMENTS-BASED INQUIRY; INDEED, THAT LANGUAGE DIRECTLY REFUTES AN APPROACH THAT WOULD TREAT AS CONSEQUENTIAL A STATUTE'S REFERENCE TO FACTUAL CIRCUM-STANCES NOT ESSENTIAL TO ANY CONVICTION. SIMILARLY, THE SIXTH AMENDMENT PROBLEMS ASSOCIATED WITH A COURT'S EXPLORATION OF MEANS RATHER THAN ELEMENTS DO NOT ABATE IN THE FACE OF A STATUTE LIKE [ACCA]. WHETHER OR NOT MENTIONED IN A STATUTE TEXT, ALTERNATIVE FACTUAL SCENARIOS REMAIN JUST THAT - AND SO REMAIN OFF-LIMITS TO JUDGES IMPOSING ACCA ENHANCEMENTS. AND FINALLY, A STATUTE'S LISTING OF DISJUNCTIVE MEANS DOES NOTHING TO MITIGATE THE POSSIBLE UNFAIRNESS OF BASING A INCREASED PENALTY ON SOMETHING NOT LEGALLY NECESSARY TO A PRIOR CONVICTION. WHATEVER THE STATUTE SAYS, OR LEAVES OUT, ABOUT DIVERSE WAYS OF COMMITTING A CRIME MAKES NO DIFF-ERENCE TO THE DEFENDANT'S INCENTIVES (OR LACK THEREOF) TO CONTEST SUCH MATTERS. ACCA, AS JUST EXPLAINED, TREATS SUCH FACTS AS IRRELEVANT: FIND THEM OR NOT, BY EXAMINING THE RECORD OR ANYTHING ELSE, A COURT STILL MAY NOT USE THEM TO ENHANCE A SENTENCE. SEE [PRESENTENCED INVESTIGATION REPORT: PG. 7-LINE (OR PARAGRAPH 36; PG. 8-LINE (OR PARAGRAPH 37; PG. 9 & 10-LINE (OR PARAGRAPH 38 & 39; THE PROBATION OFFICE BASED IT'S INFORMATION OFF A 2006 PRESENTENCE REPORT - WHICH ALLEGED MR. MORGAN CONNY'T TO BE FALSE FROM THE ACTUAL 1994 AND 1998 (RECORDS) - ALSO SEE PROBATION OFFICER STATEMENT WHICH STATES: RECORDS ARE UNAVAILABLE DUE TO THE AGE OF THE CASE, IN DECAMPS, THE SOLE DISSENTING JUSTICE MADE AN ARGUMENT IDENTICAL TO THE ONE NOW ADVANCED BY THE GOVERNMENT AND JUSTICE BREYER: THAT OUR PRIOR CASE LAW HAD NOT INTENDED TO DISTINGUISH BETWEEN STATUTES LISTING ALTERNATIVE ELEMENTS

⑨

AND THOSE SETTING OUT "MERELY ALTERNATIVE MEANS" OF
COMMISSION. 133 S. Ct. 2276 (OPINION) OF ALITO, J.) THE COURT
REJECTED THAT CONTENTION, STATING THAT "ALL THOSE DECISIONS
RESTED ON THE EXPLICIT PREMISE THAT THE LAWS CONTAINED STATUTORY
PHRASES THAT COVER SEVERAL DIFFERENT CRIMES, NOT SEVERAL
DIFFERENT METHODS OF COMMITTING ONE OFFENSE" - IN OTHER
WORDS, THAT THEY LISTED [136 S. Ct. 2255] ALTERNATIVE ELEMENTS, NOT
ALTERNATIVE MEANS. Id. AT "133 S. Ct. 2276"; SEE, e.g., JOHNSON V. U.S.,
130 S. Ct. 1265; 129 S. Ct. 2294. THAT PREMISE WAS IMPORTANT, WE EXPLAIN
ED, BECAUSE AN ACCA PENALTY MAY BE BASED ONLY ON WHAT A JURY
"NECESSARILY FOUND" TO CONVICT A DEFENDANT. DECAMPS. "133 S. Ct.
2276" AND ELEMENTS ALONE FIT THAT BILL; A MEANS, OR (AS WE HAVE
CALLED IT) "NON-ELEMENTAL FACT" IS "BY DEFINITION" NOT NECESSARY
TO SUPPORT A CONVICTION). Id. AT "136. S. Ct. 2276". ACCORDINGLY, DECAMPS
MADE CLEAR THAT WHEN THE COURT HAD EARLIER SAID (AND SAID AND SAID)
"ELEMENTS" IT MEANT JUST THAT AND NOTHING ELSE. FOR THAT REASON,
THIS COURT (INCLUDING JUSTICE BREYER) RECENTLY MADE CLEAR THAT
A COURT MAY NOT LOOK BEHIND THE ELEMENTS OF A GENERALLY DRAFTED
STATUTE TO IDENTIFY THE MEANS BY WHICH A DEFENDANT COMMITTED
A CRIME. FOR MORE THAN 25 YEARS, WE HAVE REPEATEDLY MADE
CLEAR THAT APPLICATION OF ACCA INVOLVES, AND INVOLVES ONLY,
COMPARING ELEMENTS. SOME HAVE RAISED CONCERNS ABOUT THIS
LINE OF DECISIONS AND SUGGESTED TO CONGRESS THAT IT RECONSIDER
HOW ACCA IS WRITTEN. THOMAS, JUSTICE CONCURRING. I JOIN
THE COURT'S OPINION, WHICH FAITHFULLY APPLIES OUR PRECEDENTS.
THE COURT HOLDS THAT THE MODIFIED CATEGORICAL APPROACH CANNOT
BE USED TO DETERMINE THE SPECIFIC MEANS BY WHICH A DEFENDANT
COMMITTED A CRIME. BY RIGHTLY REFUSING TO APPLY THE MODIFIED
CATEGORICAL APPROACH, THE COURT AVOIDS FURTHER EXTENDING
ITS PRECEDENT THAT LIMITS A CRIMINAL DEFENDANT'S RIGHT TO

(10)

TO A PUBLIC TRIAL BEFORE A JURY OF HIS PEERS. IN ALMENDAREZ-TORRES v. U.S. 118 S. Ct. 1219, THE COURT HELD THAT THE EXISTENCE OF A PRIOR CONVICTION TRIGGERING ENHANCED PENALTIES FOR A RECIDIVIST WAS A FACT THAT COULD BE FOUND BY A JUDGE, NOT AN ELEMENT OF THE CRIME THAT MUST BE FOUND BY A JURY. TWO YEARS LATER, THE COURT HELD THAT "ANY FACT THAT INCREASES THE PENALTY FOR A CRIME BEYOND THE PRESCRIBED STATUTORY MAXIMUM" IS AN ELEMENT [136 S. Ct. 2259] OF A CRIME AND THEREFORE" MUST BE SUBMITTED TO A JURY, AND PROVED BEYOND A REASONABLE DOUBT". APPRENDI V. NEW JERSEY, 120 S. Ct. 2348 BUT APPRENDI RECOGNIZED AN EXCEPTION FOR THE "FACT OF A PRIOR CONVICTION," INSTEAD OF OVERRULING ALMENDAREZ-TORRES-SEE "120 S. Ct 2348". I CONTINUE TO BELIEVE THAT THE EXCEPTION IN APPRENDI WAS WRONG, AND I HAVE URGED THAT ALMENDAREZ-TORRES BE RECONSIDERED. SEE DECAMP V. U.S.-133 S. Ct. 2276 (THOMAS, J., CONCURRING IN JUDGEMENT CONSISTENT WITH THIS VIEW), I CONTINUE TO BELIEVE THAT DEPENDING ON JUDGE-FOUND FACTS IN [ACCA] CASES VIOLATES THE SIXTH AMENDMENT AND IS IRRECONCILABLE WITH APPRENDI ACCA IMPROPERLY" ALLOWS THE JUDGE TO MAKE A FINDING THAT RAISES [A DEFENDANT'S] SENTENCE BEYOND THE SENTENCE THAT COULD HAVE LAWFULLY BEEN IMPOSED BY REFERENCE TO FACTS FOUND BY THE JURY. DESCAMPS "133 S. Ct. 2276". THE SIXTH AMENDMENT PROBLEMS PERSISTS REGARDLESS OF WHETHER "A COURT IS DETERMINING WHETHER A PRIOR CONVICTION WAS ENTERED OR ATTEMPTING TO DISCERN WHAT FACTS WERE NECESSARY TO A PRIOR CONVICTION. TODAY, THE COURT "AT LEAST LIMITS THE SITUATIONS IN WHICH COURTS MAKE FACTUAL DETERMINATIONS ABOUT PRIOR CONVICTIONS." IBID. AS THE COURT EXPLAINS, THE

⑪

MEANS OF COMMITTING AN OFFENSE ARE NOTHING MORE THAN "VARIOUS FACTUAL WAYS OF COMMITTING SOME COMPONENT OF THE OFFENSE." ANTE, AT 4. PERMITTING JUDGES TO DETERMINE THE MEANS OF COMMITTING A PRIOR OFFENSE WOULD EXPAND ALMENDAREZ-TORRES. THEREFORE, I JOIN THE COURT'S OPINION REFUSING TO ALLOW JUDGES TO DETERMINE, WITHOUT A JURY WHICH ALTERNATIVE MEANS SUPPORTED A DEFENDANT'S PRIOR CONVICTION. IN RENDON v. HOLDER, 782 F. 3d 466, 466-473 (CA9 2014) (DISSENT FROM DENIAL OF REHEARING), EIGHT CIRCUIT JUDGES ADDRESSED THE QUESTION OF THE DIFFICULTY OF THIS DETERMINATION. THEY DESCRIBED IT AS "A NOTORIOUSLY UNCERTAIN INQUIRY" THAT WILL LEAD TO "UNCERTAIN RESULTS" IN ANOTHER SOLO DISSENT, JUSTICE ALITO TODAY SWITCHES GEARS, ARGUING NOT THAT OUR PRECEDENT IS CONSISTENT WITH HIS MEANS-BASED VIEW, BUT INSTEAD THAT ALL OF OUR ACCA DECISIONS ARE MISGUIDED BECAUSE ALL FOLLOW FROM AN INITIAL WRONG TURN IN "TAYLOR v. U.S. 110 S. Ct 2143"[17] WELCH'S §2255 MOTION DID ASSERT THAT HIS "ROBBERY UNDER FLORIDA [STAT-UTES] IS AMBIGUOUS, VAGUE, AND WAS WITHOUT ANY VIOLENCE AND/OR PHYSICAL FORCE. "APP. 960, AND THAT FLORIDA ROBBERY" HAS MULTIMEANINGS Id., at 970. BUT CHALLENGING THE VAGUENESS OF FLORIDA A LAW) IS QUITE DIFFERENT FROM THE ARGUMENT WELCH NEEDED TO ASSERT A JOHNSON CLAIM: THAT THE RESIDUAL CLAUSE IS ITSELF UNCONSTITUTIONALLY VAGUE. TODAY'S DECISION, LIKE THOSE THAT PRECEDED IT, PROFESSES TO VENERATE JUSTICE HARLAN'S THEORY OF RETROACTIVITY. SEE ANTE, at 7; MONTGOMERY, SUPRA, at ___ 136 S. Ct. 718. THIS RINGS, HOLLOD: THESE DECISIONS SPELL IT'S RUIN. JUST LIKE WELCH ARMED ROBBERY IN THE NOTES [136 S. Ct. 1257"] ROBBERY UNDER MICH. [STATUTES] IS AMBIGUOUS, VAGUE, AND WAS WITHOUT ANY VIOLENCE AND/OR PHYSICAL FORCE." MORGAN ASSERTS THE [MCL 750.529"] ARMED ROBBERY IN 1994

"OVER"



ANY PERSON WHO SHALL FELONIOUSLY ROB, STEAL AND TAKE FROM HIS PERSON OR IN HIS PRESENCE, ANY MONEY OR PROPERTY, WHICH MAY BE THE SUBJECT OF LARCENY, SUCH ROBBER BEING ARMED WITH A DANGEROUS WEAPON. MORGAN ASSERTS THAT THE [MCL 750.529 - IN 1994] DID NOT INCLUDE ANY PHYSICAL FORCE, DID NOT INCLUDE ANY PHYSICAL VIOLENCE. ALSO, MORGAN ASSERTS THAT THE (P.S.R. PG. 7, 8, 9 AND PARAGRAPH 6 OR LINE - 36, 37, & 38) HAVE FALSIFIED INFORMATION PERTAINING TO CONDUCT THAT WAS NOT COMMITTED BY MR. MORGAN. FIRST MORGAN NEVER POINTED A GUN OR NEVER USED A GUN IN THE CASE NUMBERS: 94-01616; 94-01615; 94-01832. SECOND MR. MORGAN WAS NEVER SELECTED IN ANY LINE-UP IN THE CASES INVOLVING THE PREVIOUS THREE MENTIONED CASE NUMBERS. THIRD - MR. MORGAN ASSERTS THAT THE "ACCA DEFINES "VIOLENT FELONY" AS: ANY CRIME PUNISHABLE BY IMPRISON MENT FOR A TERM EXCEEDING ONE YEAR - THAT (i) HAS AN ELEMENT, THE USE, ATTEMPTED USE OR THREATEND USE OF PHYSICAL FORCE AGAINST THE PERSON OF ANOTHER OR (ii) IS BURGLARY, ARSON, OR EXTORTION, INVOLVES THE USE OF EXPLOSIVES, OR OTHERWISE INVOLVES CONDUCT THAT PRESENTS A SERIOUS POTENTIAL RISK OF PHYSICAL INJURY TO ANOTHER] - ACCORDING TO THE RECORDS, MR. MORGAN ASSERTS THAT THE ORDER OF PROBATION WHICH LIST THE THREE PREVIOUS COUNTS TO RUN CONCURRENT - WHICH IS DEFINE AS; HAPPENING OR OPERATING AT THE SAME TIME: JOINT AND EQUAL IN AUTHORITY - WHICH ON JULY 8TH, 1994 THE "THREE PREVIOUS COUNT" WAS CONSOLIDATED: WHICH IS DEFINE AS: TO UNITE OR BECOME UNITED INTO ONE WHOLE: COMBINE. SEE [MCL §777.57 - CONCURRENT FELONY CONVICTIONS (1)(b) THE OFFENDER'S 1 CONCURRENT CONVICTION]. SEE [U.S. V. PARRISH - 985 F.2d 554 - NOTES: UNDER THE GUIDELINES, A CONSOLIDATED CASE RECEIVES CRIMINAL HISTORY CATEGORY POINTS POINTS AS ONE SENTENCE EVEN THOUGH CASE MAY INCLUDE MORE THAN ONE CONVICTION SEE (U.S.S.G.) §4A1.2(a)(2) & COMMENTARY 3]. SEE U.S. V. DORRELL EMANUEL KING "CRIMINAL NO. 10-01 (DSD/JJG) U.S. DISTRICT COURT. D. MINNESOTA": 11/08/2011 1081 I MN DC - IN 1999, THE U.S. CHARGED KING IN SIX STATES FOR COMMITTING FOURTEEN BANK ROBBERIES OVER A SIX MONTH PERIOD. ALL CHARGES WERE CON- SOLIDATED IN THE SOUTHERN DISTRICT OF IOWA. KING PLEADED GUILTY AND

(13)

SENTENCED TO 87 MONTHS IMPRISONMENT (THE CONSOLIDATED CONVICTION). HE WAS RELEASED FROM CUSTODY IN MAY 2006 AND COMPLETED HIS TERM OF SUPERVISED RELEASE IN 2008. IN NOVEMBER 2009, KING COMMITTED BANK ROBBERY IN THE DISTRICT OF MINNESOTA, LEADING TO THE INSTANT CASE. A GRAND JURY INDICTED KING ON TWO COUNTS OF BANK ROBB-ERY, IN VIOLATION OF 18 U.S.C. § 2113(a). ON FEB. 9TH, 2010, KING PLEADED GUILTY TO BOTH COUNTS. IN THE PLEA AGREEMENT, THE PARTIES RESERVED THE RIGHT TO SEEK DEPARTURES AND VARIAN-CES. AT SENTENCING, THE COURT ADOPTED THE PRESENTENCE INVESTIGATION REPORT AND DETERMINED THAT APPLICATION OF THE U.S. SENTENCING COMMISSION GUIDLINES MANUAL (GUIDE-LINES) RESULTED IN AN INITIAL OFFENSE LEVEL OF 21 AND A CRIMINAL HISTORY CATEGORY OF III. AS A RESULT, KING ADVISORY TERM OF IMPRISONMENT WAS 46-57 MONTHS. THE GOVERNMENT MOVED FOR AN UPWARD DEPARTURE UNDER GUIDELINES § 4A1.3, ARGUING KING SHOULD BE SENTENCED AS A DE FACTO CAREER OFFENDER. Id AT 16:23-24. THE COURT FOUND THAT "KINGS 14 PRIOR BANK ROBBERIES COMMITTED OVER A PERIOD OF SIX MONTHS, IN SIX DIFFERENT STATES, REFLECT PROFOUND CRIMINAL BEHAVIOR" AND "OBVIOUS INCORRIGIBILITY" AND NOTED THAT DUE TO THEIR CONSOLIDATION INTO A SINGLE PROCEEDING, "KING RECEIVED THREE POINTS OUT OF 42 POINTS FOR THE 14 BANK ROBBERIES - WHICH THE DISTRICT TREATED AS A SINGLE CONVICTION AND SENTENCE. JUST AS THE U.S. DISTRICT COURT CONSIDERED "14 BANK ROBBERIES" IN THE [U.S. V. KING - NO.10-01(DSD/JJG)] CASE; MORGAN ASSERTS IN THIS PRESENT CASE THAT THE "3 COUNTS" THAT WAS TRIED AND DISPOSED OF AS "PROBATION" AND ADJUDICATED AS A JUVENILE - WAS TRANSACTED AS "ONE ADJUDICATION"



AND ONE SENTENCE. SEE THE "PROBATION ORDER & SENTENCE DOCUMENTATION" WHICH REFLECT THAT MORGAN "JUVENILE ADJUDICATION WAS CONSOLIDATED INTO A "SINGLE TRANS- ACTION" WHICH EXCLUDE MR. MORGAN FROM THE PROVISION OF "THREE SEPARTE PREVIOUS CONVICTION"! FOURTH, MORGAN ASSERTS THAT THE "PROBATION ORDER" DOES NOT SATISFY THE TERM "IMPRISONMENT" AS THE [ACCA-DEFINE VIOLENT FELONY RELATINGING TO IMPRISONMENT]. SEE THE DEFINITION OF PROBATION: IN CRIMINAL LAW, THE SENTENCE IMPOSED BY THE JUDGE WHEN THE DEFENDANT IS NOT IMPRISONED BUT INSTEAD IS REQUIRED TO REPORT PERIODICALLY TO THE PROBATION OFFICER" WHO SUPERVISES THE PROBATION, ENSURING THAT THE PERSON ON PROBATION IS PRODUCTIVELY EMPLOYED AND OUT OF TROUBLE WITH LAW]. ALSO MORGAN WOULD LIKE FOR THE RECORD TO REFLECT THE "VAGUENESS OF U.S.G. § 4B1.4-ARMED CAREER CRIMINAL APPLICATION NOTE: IT IS ALSO TO BE NOTED THAT PROCEDURAL STEPS RELATIVE TO THE IMPOSITION OF AN ENHANCED SENTENCE UNDER 18 U.S.C. § 924(e) ARE NOT SET FORTH BY STATUTE & MAY VARY TO SOME EXTENT. SEE [139 S. Ct. 2319] IN OUR CONSTITUT- TIONAL ORDER A VAGUE LAW IS NO LAW AT ALL. DEFENCE ASSERTS THAT CASE [94-01832] BE REMOVED FROM THE [P.S.R." IN RESPECT OF FEDERAL RULE OF EVIDENCE RULE 410 (a)(2) PROHIBITED USES IN A CRIMINAL CASE, EVIDENCE OF THE FOLLOWING IS NOT AMISSIBLE AGAINST THE DEFENDANT WHO MADE THE PLEA: (2) OF A NOLO CONTENDER PLEA] SEE [P.S.R.; PG.9; LINE & OR PARAGRAPH 38 WAS A NOLO CONTENDER PLEA] SEE [FED. R. OF CRIM. P. RULE 32(d)(3)(c)-EXCLUSION OF ANY INFORMATION) THAT IF DISCLOSED MIGHT RESULT IN HARM TO THE DEFENDANT]. DEFENCE REQUEST THAT THE RULE APPLY AS COMMANDED AND [NOLO CONTENDER PLEA] BE EXCLUDED AS EVIDENCE AGAINST THE DEFENDANT.

(15)

MORGAN ASSERTS (18 U.S.C. § 3553 - IMPOSITION OF A SENTENCE (f) LIMITATION ON APPLICATION OF STATUTORY MINIMUM IN CERTAIN CASES (1) IF THE DEFENDANT DOES NOT HAVE (a) MORE THAN 4 CRIMINAL HISTORY POINTS (2) THE DEFENDANT DID NOT USE VIOLENCE OR THREATS OF VIOLENCE IN CONNECTION WITH OFFENSE (3) THE OFFENSE DID NOT RESULT IN DEATH OR SERIOUS BODILY INJURY TO ANY PERSON). SEE PG. 6, PARAGRAPH AND OR LINE 23 & 24 OF THE P.S.R., ALSO SEE PG. 12, PARAGRAPH AND OR LINE 41 & 42. WHICH REFLECT TOTAL CRIMINAL HISTORY POINTS OF 3 - WHICH MORGAN ASSERTS IS NOT MORE THAN 4 POINT IN (18 U.S.C. § 3553(f)(1)(A)), FOR THOSE REASON MORGAN REQUEST THAT THE SENTENCING COURT HONOR THE LIMITATION ON APPLICATION OF STATUTOR MINIMUM WHEN TOTAL CRIMINAL HISTORY POINTS IS 3 WHICH IS LESS THAN FOUR, AND MORGAN REQUEST THAT THE APPLICABLE GUIDELINE FOR BASE OFFENSE LEVEL 14 WHICH IS ON PG. 7, PARAGRAPH & OR LINE 27 & 32 OF THE P.S.R.; AND CRIMINAL HISTORY 3 POINT FOR CATEGORY II - WHICH IS ON PG. 12, PARAGRAPH & OR LINE 41 & 42 OF P.S.R. BE THE COURSE OF THE GUIDELINE RANGE IN REFERENCE OF (18 U.S.C. § 3351(b) & 18 U.S.C. § 3553(f)(1)(A) - LIMITATION) OF THE APPLICATION OF STATUTORY MINIMUM - IF DEFENDANT DOES NOT HAVE MORE THAN 4 CRIMINAL HISTORY POINT - THE P.S.R. REFLECT 3 CRIMINAL HISTORY POINTS). ALSO MORGAN ASSERTS (LOCAL RULE FOR THE EASTERN DISTRICT OF MICHIGAN - RULE 16(b)3) DISCLOSURE TO U.S. PROBATION) - AT ARRAIGNMENT THE U.S. GOVERNMENT SHALL TENDER TO U.S. PROBATION OFFICE ALL ESSENTIAL INFORMATION NEED BY U.S. PROBATION TO ACCURATELY CALCULATE THE SENTENCE GUIDELINE RANGE FOR THE DEFENDANT INCLUDING, BUT NOT LIMITING TO: INFORMATION REGARDING THE NATURE OF OFFENSE, DEFENDANT'S ROLE IN OFFENSE, DEFENDANT CRIMINAL HISTORY WHICH IS 3 POINTS



OR CATEGORY II, SEE ATTACHMENT THE U.S. GOVERNMENT CALCULATION SHEET WHICH REFLECT (N/A IN) THE ARMED CAREER CRIMINAL BOX). SEE SHERMAN HARPER V. U.S., 780 F.D. APPX. 236, (6TH CIR. 2019) ID. AT 239- IN DECIDING WHETHER AN OFFENSE QUALIFIES AS A VIOLENT FELONY UNDER (ACCA) THE CATEGORICAL APPROACH FIRST ADOPTED IN TAYLOR V. U.S., 110 S. CT. 2143, (1990). IN DESCAMPS U.S., 133 S. CT. 2276 (2013), THE COURT REAFFIRMED IT'S COMMITMENT TO A "STRICT CATEGORICAL APPROACH." DESCAMPS HOLDS THAT THE DETERMINATION OF A PREDICATE OFFENSE UNDER THE [ACCA] MUST BE MADE SOLELY BY EXAMINING THE ELEMENTS OF THE CRIMINAL STATUTE COMPARED WITH "BURGLARY, ARSON), EXTORTION), OR THE USE OF EXPLOSIVES." IF ELEMENTS OF THE CRIME COULD BE MET WITHOUT THE USE OF VIOLENT FORCE, THEN IT CANNOT QUALIFY AS A PREDICATE FENSE. SEE 1994 RECORDS· MORGAN WAS ONLY A DRIVER, NEVER USED VIOLENT OR PHYSICAL FORCE & NOTE THE R. DOES NOT ACCURATELY REFLECT THE "DRIVER ONLY - CONDUCT WHICH MORGAN DID ACCORDING TO THE 1994 JUVENILE DICATION) RECORD- WHICH WAS NO VIOLENT OR PHYSICAL FORCE. SEE Id. AT 2293! 780 FED. APPX. 240 · MATHIS V. 136 S. CT. 2171, (2016); FOOTNOTES. 7) DESCAMPS PREVIOUSLY RECOGNIZED JUST THIS WAY OF DISCERNING WHETHER A ATUTORY LIST CONTAINS MEANS OR ELEMENTS. SEE 133 S. CT. 2285, N.2. THE COURT THERE NOTED THAT INDICTMENTS, JURY STRUCTIONS, AND PLEA AGREEMENT WILL OFTEN "REFLECT THE CRIME'S ELEMENTS" AND SO CAN REVEAL IN SOME CASES TTER THAN STATE LAW ITSELF - WHETHER A STATUTORY LIST IS OF ELEMENTS OR MEANS. IbId). ACCORDINGLY, WHEN TE LAW DOES NOT RESOLVE THE MEANS - OR ELEMENTS QUESTIONS, COURT SHOULD RESORT TO THE STATE CORD FOR HELP IN MAKING THAT DETERMINATION. SEE WEICH V. U.S. 136 S.CT. 1257 (4/18/16), WEICH BBERY DID NOT QUALIFY AS AN ACCA PREDICATE. SEE, JOHNSON, 530 F. APPX. 528, 532-33 (6TH CIR. 2013) UNESSEE ROBBERY DID NOT QUALIFY AS AN [ACCA PREDICATE]. SEE TODD CHAZEN V. MATTHEW MABSKE (NO.18-68; 9/9/19) AT SENTENCING THE GOVERNMENT CONCEDED THAT BECAUSE CHAZEN'S TWO BURGLARY CONVICTIONS VOLVED IN THE SAME COURSE OF CONDUCT- THEY SHOULD NOT BE COUNTED AS SEPARATE PREDICATE CONVICTIONS NER [ACCA]. SEE [U.S.S.G. §5G1.2- SENTENCING ON MULTIPLE COUNTS]. FOR THESE REASON· MORGAN HAVE VEN THAT HE DOES NOT QUALIFY FOR [ACCA - SENTENCE ENHANCEMENT]. PLEASE ALLOW THE [18 U.S.C. §.3553 )(A) REFLECT· BASE OFFENSE LEVEL 14 & CRIMINAL HISTORY CATEGORY II = 18-24 MONTHS].

## PROOF OF SERVICE

E UNDERSIGN CERTIFIES THIS DOCUMENT ON MARCH 19TH, 2020

PRO SE GEMAR MORGAN

PG. 17

THE DEFENCE COMES BEFORE THE COURT WITH NEW
"RE-DISCOVER LOSSES". AS OF MARCH 7TH, 2020 MY MOTHER
DIED FROM A HEART ATTACK. DURING THIS TIME, MY MOTHER
WAS CARING FOR MY TWIN 15 YEAR OLD DAUGHTERS. DUE TO THE
LOSSES AND FINACIAL BURDEN I'VE ENCOUNTER DURING THE
STRUGGLING CONDITIONS I ENCOUNTER DURING THE RECOVERY
PROCEDURES FROM A SUCCESSFUL CAREER AS A PROFESSIONAL
TRUCK DRIVER. I WAS ORDER BY VARIOUS DOCTORS [NEURO SERGON
LUCIA ZANATAMO; PAIN DOCTOR-DR. SHABWAMA; PSCHIATRIST
DR. THOMAS PARKS; BALANCE & VISION THERAPY AND PHYSICAL
THERAPY]. ALSO-I WAS DIAGNOIS WITH LUNG CANCER FROM UN-
KNOWN DETECTION-DUE TO THE CURRENT TESTS AND EXAMS
I HAVE STARTED AS OF MARCH 16TH 2020 THRU [MACKENZIE AND
MCCLAREN HOSPITALS]. ALSO I AM SUFFERING FROM [VARIOUS
BRAIN, UPPER & LOWER SPINAL DAMAGES] THAT AFFECTS VARIOUS
BODY PARTS & ORGAN]. DUE TO THE LUNG FOCUS & ATTENTION-ALOT
OF DIFFERENT MEDICAL TEAM IN THE [JAILS & PRISON] HAVE
PLACED THE [BRAIN, UPPER & LOWER SPINAL DAMAGES ON THE
BACK BURNER-UNTIL THEY CAN DETERMINE THE LUNG CANCER
SOURCE AND TYPE]. DUE TO THE [FAILING HEALTH, DEPENDENT
CARE THAT MY CHILDREN] ARE NOT RECEIVING DUE TO THE
WORKER COMPENSATION CLAIM BEING ON HOLD ACCORDING
TO THE STATUS OF INCARCERATION, MY CHILDREN ARE
SUFFERING AND MAY FACE FOSTER CARE DUE TO MY
MY MOTHER DEATH, ALSO DUE TO MY CHANCES OF BEING
PARALYISED AND FACING DEATH, DUE TO THE LACK
OF TREATMENT, THAT I HAVE ENCOUNTER WHILE

18

INCARCERATED ], I ASK AND REQUEST A [COMPASSIONATE
RELEASE TO THE ASSISTED LIVING MEDICAL HOME THAT I
WAS ASSIGNED TO PRIOR TO BEING INCARCERATED ON
APRIL 9TH 2019. THE ASSISTED LIVING PROGRAM I AM ASSIGNED
IN ENSURERS THAT I HAVE MEDICAL TRANSPORTATION AND
FULL ASSISTANCE TO ALL DEPARTMENT OF HEALTH NEEDS AND
THERAPY TO PROPERLY RECOVER FROM MOST OF THE LIFE THREATENING
CRISIS THAT I WAS JUST BECOMING AWARE OF AND BEING
ADMITTED TO WHILE I WAS BEGINNING VARIOUS RECOVERY TREAT-
MENT PROGRAMS WHILE I WAS IN THE ASSISTED LIVING PROGRAM].
DUE TO THE LIFE THREATING CRISIS THAT I AND MY CHILDREN
ARE SUFFERING DRAMATICALLY FROM· I ASK THAT THE DISTRICT
COURT HEAVILY CONSIDER THE [FATHER WHO DID EVERYTHING
UNDER THE SUN TO BE THE BEST EXAMPLE, PROVIDER, PROTECTER
AND HELPER FOR THIS COUNTRY, AMERICA ECONOMY, MY FAMILY,
FAMILIES IN AMERICA WHEN I PROVIDED PROFESSIONAL SERVICE
AS A TRUCK DRIVER WHO PROVIDED GREAT SERVICE. I AM NOT
A CRIMINAL - COULD THE COURT CONSIDER ACCEPTING THAT
I AM A FATHER WHO PUT IN MY BEST & ALL TO EARN A
CAREER TO RAISE ALL MY CHILDREN & INSPIRE ALL THE
LIVES WHO I TOUCH WHILE DOING MY JOB. PLEASE ACCEPT
THIS REQUEST AND WITH THE RESPECT AS THO IT IS GOD'S
PLAN- PLEASE GRANT THE COMPASSIONATE RELEASE TO
IN ASSITED LIVING PROGRAM IN LIGHT OF [MEDICAL NEEDS].
SEE [U.S. v. ATHONY BUCCI, NO. 04-10194-WGY (9/16/2019). I HAVE A
TREMENDOUS IMPACT ON LIVES IN AMERICA; THIS IS FROM A
CAREER ORIENTED FATHER "GEMAR MORGAN]"!                    "OVER"



The Probation officer Definition of U.S.S.G §4B1.4
Applicable Note is "ERROR, PREJUDICE, HARMFUL AND
INCORRECT" AND HAVE INFLUENCED THE COURT AND JUDGE
David Lawson INTO Negatively LABELING THE DEFENCE
AS A FALSE SENCE OF BEING AN "ARMED CAREER CRIMINAL".
SEE U.S.S.G. §4B1.4 APPLICABLE NOTE 1: STATES DEFENDANT
MUST HAVE 3 PRIOR "CONVICTIONS" FOR VIOLENT THAT WAS ON
OCCASIONS DIFFERENT FROM ONE ANOTHER. MORGAN ASSERTS
THAT THE 1994 JUVENILE ADJUDICATION - WAS ONE JUDGEMENT
AND ONE SENTENCE THAT TOOK PLACE ON THE SAME OCCASION
BEING - 7/08/1994. NOTE "3 PRIOR CONVICTIONS" - THAT
WAS ON OCCASIONS DIFFERENT FROM ONE ANOTHER. SPECIF-
ICALLY SPEAK ABOUT "3 PRIOR CONVICTIONS" - , "NOT 3
PRIOR OFFENSES, THAT WAS THE SUBJECT OF ONE JUDGEMENT
AND ONE SENTENCE - ON ONE DATE. SEE §4B1.2 - APPLICATION
NOTE 1 & PARAGRAPH 3 : IF DEFENDANT IS SENTENCED UNDER 18
U.S.C. § 924(e), §4B1.4 (ACCA) WILL APPLY. SEE §4B1.2 (C) SENTENCE
FOR PRIOR CONVICTION ARE TREATED THE SAME AS ONE
CONVICTION IF SENTENCE ARE NOT SEPARTE. PLEASE
CORRECT THE (P.S.R.) THE 1994 JUVENILE ADJUDICATION
WAS NOT SEPARTED WHICH MEANS 1994 JUVENILE
ADJUCATION AH WAS DONE ON: 7/8/1994 "ONE DATE,
ONE JUDGEMENT". PLEASE HONOR THIS LAW AND
REMOVE THE [A.C.C.A] FROM [P.S.R].



\* MY LAST ADDENDUM - SO THIS WILL BE FRONT & BACK MAYBE 3 TO 4 PAGE CONSOLIDATED INTO ONE

SAMPLE                    SAMPLE                    SAMPLE

## ADDENDUM

NAME: GEMAR MORGAN
DOCKET NO.: 2:19-mj-30197 & 2:19-cr-20259
DATE: 3-20-80

Controverted Item # 6

Page # 6          Paragraph # 22          Line(s) 22

Section I:   Defendant's Position: SEE 720 F.3d 215 (2013), U.S. V. DAVIS. ON 9/9/2005, DAVIS PLEADED GUILTY IN NORTH CAROLINA STATE COURT TO SEVERAL COUNTS IN THE JULY 2004 AND FEBRUARY 2005 STATE INDICTMENTS. AS RELEVANT, DAVIS PLED GUILTY TO SIX COUNTS OF ROBBERY WITH A DANGEROUS WEAPON - ONE COUNT FOR THE 2004 ROBBERY, AND FIVE COUNTS FOR THE 2005 ROBBERIES. CONSISTENT WITH THE PLEA AGREEMENT THE CHARGES WERE ONE JUDGEMENT AND THE SENTENCE WHICH IS A CONSOLIDATED SENTENCE. IN CALCULATING THE GUIDELINE RANGE THE PROBATION OFFICE QUALIFIED FOR ENHANCEMENT. AT SENTENCING, DAVIS OBJECTED TO THE SENTENCING ENHANCEMENT, ARGUING THAT HE RECEIVED A "CONSOLIDATED SENTENCE" FOR HIS PRIOR STATE OFFENSES AND THUS DID NOT HAVE "AT LEAST TWO PRIOR FELONY CONVICTIONS" AS DEFINED BY THE GUIDELINES. UNDER THE GUIDELINES, THE EXISTENCE OF TWO PRIOR FELONY CONVICTIONS ALONE IS NOT DISPOSITIVE. THE DEFENDANT MUST ALSO HAVE AT LEAST TWO PRIOR SENTENCES FOR THOSE CONVICTIONS. SPECIFICALLY, THE "TWO PRIOR FELONY CONVICTIONS" PRONG IS SATISFIED IF (1) THE DEFENDANT PREVIOUSLY SUSTAINED AT LEAST "TWO FELONY CONVICTIONS OF EITHER A CRIME OF VIOLENCE OR A CONTROLLED SUBSTANCE OFFENSE (AND (2) THE SENTENCES FOR AT LEAST TWO OF THE AFOREMENTIONED FELONY CONVICTIONS ARE COUNTED SEPARATELY." U.S.S.G. 4B1.2(C) (EMPHASIS ADDED). DAVIS CONCEDES THAT THE FORMER REQUIREMENT - AT LEAST TWO FELONY CONVICTIONS OF EITHER A CRIME OF VIOLENCE OR CONTROLLED SUBSTANCE - IS MET BECAUSE HE HAS AT LEAST TWO PRIOR ROBBERY CONVICTIONS. HE CONTENDS, HOWEVER, THE LATTER REQUIREMENT SEPARATELY COUNTED SENTENCES FOR THE CONVICTIONS
IS NOT MET BECAUSE
HE RECEIVE ONLY

**Counsel's Signature** PRO se morgan          **Defendant's Signature**
ONE SENTENCE FOR THOSE CONVICTIONS. FOR THOSE REASON WE AGREE. Id AT 720 F.3d 218: Id AT 720 F.3d 220 THE COURT VACATED AND REMANDED. THE PROBATION OFFICER, IN CORRECTLY WITH THE INTENT OF PREJUDICE AND ERROR DEFINE "U.S.S.G. 4B1.2(C) SENTENCES FOR PRIOR CONVICTIONS, ARE TREATED THE SAME AS "ONE CONVICTION IF SENTENCE ARE NOT SEPARATE - PLEASE CORRECT P.S.R. - THE 1994 CONVICTION WAS ONE SENTENCE AND ONE JUDGEMENT - WHICH IS ONE PRIOR CONVICTION. NOT SEPARATE SENTENCES.

SEE BACK

Section II:   Probation Department's Position:

" SEE BACK "

_____
U.S. Probation Officer

SEE 720 F.3d 220 AT III. BASED ON OUR INTERPRETATION OF THE GUIDELINES AT 4B1.2(C) 4B1.4 APPLICABLE NOTE 11, WE CONCLUDE THAT THE DISTRICT COURT ERRED IN APPLYING THE CAREER OFFENDER ENHANCEMENT BECAUSE DAVIS HAD ONLY ONE PRIOR QUALIFYING SENTENCE WHICH INCLUDED ONE CRIME OF VIOLENCE AND ONLY ONE SENTENCE NOT TWO OR SIX.    \* PLEASE CORRECT P.S.R. & REMOVE THE FRAUDULANT NOTE.     6 ATTEMPT TO APPLY THE ACCA. THIS CASE IS NOT AN ACC...

THE PROBATION OFFICER DEFINITION OF U.S.S.G 4B1.4 APPLICABLE NOTE 1 IS "ERROR, PREJUDICE, HARMFUL AND INCORRECT" 4B1.4 APPLICABLE NOTE 1 STATES DEFENDANT MUST HAVE 3 PRIOR CONVICTIONS FOR VIOLENT THAT OCCURS ON OCCASIONS DIFFERENT FROM ONE ANOTHER. MORGAN 1994 CONVICTION INCLUDED ONE JUDGEMENT AND ONE SENTENCE THAT WAS ON ONE DATE OF 7-28-94. SEE 4B1.2(C) (1) DEFENDANT HAS TWO FELONY CONVICTIONS OF EITHER VIOLENCE OR CONTROLLED SUBSTANCE (2) THE SENTENCES FOR THE TWO LEAST FELONY CONVICTION ARE SEPARATE. SEE 4B1.4 APPLICATION NOTE 1, AND PARAGRAPH 31. IF DEFENDANT IS SENTENCED UNDER 18 U.S.C. 924(C), 4B1.4 (ACC) WILL APPLY. MORGAN 1994 CONVICTION WAS NOT A SEPARATE PLEA GATE OR WAS NOT SEPARATE SENTENCE. PLEASE CORRECT P.S.R. TO REFLECT ONE CONVICTION, ONE JUDGEMENT, ONE SENTENCE. MORGAN 1994 SENTENCE IS NOT ACCA QUALIFICATION. PLEASE CORRECT ERROR...

A court, except as to part III, concluding that an inquiry under the ACCA to determine whether a guilty plea under a non-generic statute necessarily admitted the elements of the generic offense is limited to the terms of the charging document, to the terms of a plea agreement, a transcript of colloquy between judge & defendant in which the defendant confirmed the factual basis for the plea, or to some comparable judicial record of this information. See id. at 544 U.S. 16, in a non-generic state, the fact necessary to show a generic crime is not established by the record of conviction, as it would be in a generic state. When a judicial finding of a disputed prior conviction is made on the authority of Almendarez-Torres v. U.S., 523 U.S. 224, 1998 (11), the sentencing judge considering the ACCA enhancement would (on the government's view) make a disputed finding of fact about what the defendant and state judge must have understood as the prior plea's factual basis, and the dispute raised the concern underlying Jones and Apprendi: the Sixth and Fourteenth Amendment guarantee a jury's standing between a defendant and the power of the state, and the guarantee of a jury's finding of any disputed fact essential to increase a potential sentence. As the Ct.'s ruling, the disputed fact here is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to Jones and Apprendi, to say that Almendarez-Torres clearly authorizes a judge to resolve the dispute. The rule of reading statutes to avoid serious risks of unconstitutionality therefore counsels the court to limit the scope of judicial factfinding on the disputed & generic character of a prior plea. In Taylor v. United States, 495 U.S. 575 (1990), we held that a court sentencing under the ACCA could look to statutory elements, charging documents, and jury instruction to determine whether an earlier conviction after trial was for a generic offense. The question here is whether the sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported, a conviction for a generic offense. We hold that it may not, and that a later court determining the character of an admitted crime is generally limited to examining the statutory definition, charging documents, written plea agreement, and any explicit factual finding by the trial judge to which the defendant assented. 544 U.S. at 33. "Finally, today's hint at extending the Apprendi rule to the issue of ACCA prior crimes surely will do no favors for future defendants in sheparable shoes. When ACCA defendants in the future go to trial rather than plead guilty, the majority's ruling in effect invites the government, in prosecuting the federal gun charge, also "to prove to the jury" the defendant's prior conviction. Almendarez-Torres, 523 U.S. 234-35. Id. at 235, and that prejudice is likely to be especially strong in ACCA cases, where the prior crimes are by definition, "violent." 18 U.S.C. § 924(e). Please remove the ACCA prejudice enhancement. The PSIR shall reflect the only lawful abiding guideline range of (14 base offense; category II), 18-24 month.

The language of the guidelines is plain. It begins with the basic principle that there must be more than one prior sentence for the enhancement to apply. See U.S.S.G. 4B1.2(c) (laying out the sentence "requirements" in plural, as opposed to singular, form). In the absence of multiple prior sentences, the existence of an intervening arrest is irrelevant.

Case 2:19-cr-20259-DML-DRG ECF No. 104 filed 03/19/20 PageID.377 Page 18 of 26

PCS CODE: IDR/SRE/PPH-ORH/OPP
TCS CODE: SRE/PPH

Approved, SCAO

| STATE OF MICHIGAN<br><br>JUDICIAL CIRCUIT - FAMILY DIVISION<br>INGHAM COUNTY | ORDER AFTER DISPOSITIONAL REVIEW/<br>PERMANENCY PLANNING HEARING<br>(CHILD PROTECTIVE PROCEEDINGS)<br>ORDER 1 OF 6 | CASE NO.: 38832-3/4/5/6/7-NA<br>PETITION NO.: n/a |

Court address: 313 W. Kalamazoo Street, Lansing, MI 48933      Court telephone no.: (517) 483-6105

1. In the matter of: **Prophet CHARLES, Angell, Jazmine & Jemaria MORGAN, Ebony Morse**

   name(s), alias(es), DOB(S): 08/03/2005, 11/272006, 08/17/2004, 08/17/2004, 08/19/2011

2. Date of hearing: Tuesday, February 11, 2020     Judge/Referee: ATTORNEY REFEREE PETER N. BROWN    Bar no.

3. ■ Removal date: 01/10/2019 _____ (specify for each child if different)

   Last permanency planning hearing date: November 26, 2019 _____ (specify for each child if different)

4. As of the last order, the child(ren) named above was/were in the protective/temporary custody of the court, and
   ☒ remained in the home. ☒ was/were placed with the department *Jazmine & Jemaria*

5. Notice of hearing for the   ☒ review   ☐ permanency planning   ☐ combined review and permanency planning
   hearing was served as required by law.   ☐ Notice of proceedings to be given as required by law.

6. ☐ This hearing is being conducted under MCR 3.941(D)(2) for an Indian child who was removed from the home. The Indian
   child removal hearing ☐ was held with this hearing. ☐ was previously held. ☐ is scheduled for _____

**THE COURT FINDS:**

7. The lawyer-guardian ad litem ■ has   ☐ has not   complied with the requirements of MCL 712A.17d.

8. ■ a. There is probable cause to believe the legal/putative father(s) is/are: **Gemar Morgan is the legal father of Prophet Charles, Angell,**
   (Name each child, his/her father, and whether legal or putative.) **Jazmine & Jemaria Morgan & Ebony Morse**
   ☐ b. The putative father of _____ is unknown and cannot be identified.
   ☐ c. The putative father was notified as required by law and failed to establish paternity within the time set by the court. The putative
   father waives all rights to further notice, including the right to notice of termination of parental rights and the right to an attorney.

9. The court has considered the case service plan and other evidence presented. The findings below are specific to this case and
   are based upon this hearing and   ■ the following report(s):   Updated Service Plan   Date of Report: 1/31/20
   identify report(s) and date(s) of report(s)

   Specific conditions reviewed on the record as required by MCL 712A.19(6) were
   a. compliance with the case service plan with respect to services provided or offered to the child and his or her parent(s), guardian,
   or legal custodian and whether the parent(s), guardian, or legal custodian complied with and benefited from those services.
   b. compliance with the case service plan with respect to parenting time with the child and whether parenting time did not occur
   or was infrequent and the reasons why.
   c. the extent to which the parent(s), guardian, or legal custodian complied with each provision of the case service plan, prior court
   orders, and any agreement between the parent(s), guardian, or legal custodian and the agency.
   d. likely harm to the child if the child continued to be separated from his or her parent(s), guardian, or legal custodian.
   e. likely harm to the child if the child was returned to his or her parent(s), guardian, or legal custodian.

**Note:** If it comes to the court's attention or new allegations are made during this hearing that require the removal of the child(ren), removal must be done in
accordance with MCR 3.974.

See Additional pages.

Do not write below this line – For court use only

**Use Note:** Do not use this form for review or
permanency planning hearings after termination.
Use form JC 76 instead.

**Reference Note:** The term "department" refers to
the Department of Health and Human Services.

MCL 712A. 17d(1)(c), MCL 712A.18f, MCL 712A.19, MCL 712A.19a
MCL 712A.20, MCR3.002
MCR 3.921(C), MCR 3.974(A)(3), MCR 3.975, MCR 3.976(B)(1), MCR 3.979

JC 19 (12/17)   **ORDER AFTER DISPOSITIONAL REVIEW/PERMANENCY PLANNING HEARING**
**(CHILD PROTECTIVE PROCEEDINGS)**

Order After Dispositional Review/Permanency Planning Hearing (12/17) Page _2_ of _6_

Order ____ of ____

CASE NO.: 38832-3/4/5/6/7-NA
PETITION NO.: n/a

☐ 10. Returning the child(ren) to the parent(s), guardian or legal custodian ☐ would ☐ would not cause a substantial risk of harm to the child(ren)'s life, physical health, or mental well-being.

☐ 11. The child(ren) should not be returned to the parent(s), guardian or legal custodian. (State reasons for a: or b. in the space below.)
    ☐ a. The agency ☐ should ☐ should not initiate proceedings to terminate the parental rights to the child(ren) because:
    ☐ b. The child has been in foster care for 15 months of the most recent 22 months, and the agency
        ☐ should initiate proceedings to terminate the parental rights to the child(ren).
        ☐ should not initiate proceedings to terminate the parental rights to the child(ren) for the following compelling reasons:

■ 12. a. Reasonable efforts ☑ were ☐ were not *MANIMAN* made to preserve and reunify the family to make it possible for the child(ren) to safely return to the child(ren)'s home. (Specify reasonable efforts below, and if applicable, the reasons for return)
    ☑ 1) Reasonable efforts for reunification should be continued. *M-MAS-2/19  F-MAS-4/19*
    ☑ 2) Those reasonable efforts were successful and the child(ren) should be released to *MUTUAL*

    Name(s) of parent(s), guardian, or legal custodian
    The reasonable efforts include: (specify)
    Updated Service Plan Dated: *1/31/20*

*PROPHET, ANGELL & EBONY.
PLACED WITH MOTHER — DOING WELL
JAZMINE & JEMARIA WITH
PATERNAL GRANDMOTHER*

*MOM COUNSELING WITH WELLNESS COUNSELING
CENTER, PARENTING TIME
FAMILY REUNIFICATION PROGRAM COMPLETED 1/15/20*

*GEMAR NOT PARTICIPATING
JAZMINE & JEMARIA DOING WELL, SCHOOL*

    ☐ b. Reasonable efforts to preserve and reunify the family to make it possible for the child(ren) to safely return to the child(ren)'s home are not required based on a prior order.

■ 13. Progress toward alleviating or mitigating the conditions that caused the child(ren) to be placed or to remain in temporary foster care ☑ was ☐ was not made in accordance with MCL 712A.19(7).

14. The child(ren)'s continued placement ☑ is necessary and appropriate and is meeting the child(ren)s needs.
    ☐ is no longer necessary or appropriate.

☐ 15. The child(ren) is/are Indian as defined in MCR 3.002(12), and placement ☐ remains ☐ does not remain appropriate and ☐ does ☐ does not Comply with MCR 3.967(F).

f Order After Dispositional Review/Permanency Planning Hearing (12/17) Page __3__ of __6__     | CASE NO.: 38832-3/4/5/6/7-NA
Order ____ of ____     | PETITION NO.: n/a

16. The child(ren) is/are Indian and the court finds that active efforts ☐ have ☐ have not been made to provide remedial services and rehabilitative programs designed to prevent the break up of the Indian family.

■ 17. *Reasonable efforts ☑ have ☐ have not _known_ been made to finalize the court-approved permanency plan of
    ☑ a. return to the parent for the child(ren) named  *PROPHET, ANGEL & EBONY*
    ☐ b. adoption for the child(ren) named
    ☒ c. legal guardianship for the child(ren) named  *JAZMINE & JEMIMIAH*
    ☐ d. placement with a fit and willing relative for the child(ren) named
    ☐ e. ☐ i. placement in another planned permanent living arrangement (APPLA) for the child(ren) age 16 or older named

    due to compelling reasons that (Specify the compelling reasons for another planned permanent living arrangement by entering the language that corresponds to the number[s] from the list on the last page.)

The reasonable efforts made to finalize the court-approved permanency plan identified above include:
(Specify the permanency plan for each child and the reasonable efforts made toward finalizing that plan)
Updated Service Plan Dated: _____
    *SEE #12*

☐ Because adoption is the court-approved permanency plan, the department shall be ordered to initiate proceedings to terminate parental rights.

☐ 18. The permanency planning goal in item 17 ☐ is appropriate. ☐ is no longer appropriate and shall be:

☐ 19. The appointment of a juvenile guardian is in the best interest of the child(ren) named above in item 17.c. ☐ The court has received and considered the information required by MCR 3.979(A)(1), and the proposed guardian should be appointed.

☐ 20. The department, foster home, or institutional placement ☐ has ☐ has not followed the reasonable prudent parenting standard that the child(ren) has/have regular opportunities to engage in age or developmentally appropriate activities.

☐ 21. ☐ a. All siblings are in joint placement.
    ☐ b. All siblings are not in joint placement because:

    Sibling contact ☐ is occurring according to law. ☐ is not occurring because (see item 31 to order sibling contact):

☐ 22. Parenting time with _____, even if supervised, may be harmful to the child(ren).

☐ 23. A juvenile guardian was appointed and jurisdiction over _____ under MCL712A.2(b) should be terminated. (This finding is considered at the first review hearing after the appointment.)

☐ 24. A juvenile guardianship for _____ was revoked under MCR3.979(F), and this hearing is held under MCR3.979(F)(7).

NOTE: * MCL 712A.19a provides that these reasonable efforts findings must be made within 12 months from when the child was removed from his/her home and every 12 months thereafter.

Order After Dispositional Review/Permanency Planning Hearing (12/17) Page __4__ of __6__

| | |
|---|---|
| CASE NO.: | 38832-3/4/5/6/7-NA |
| PETITION NO.: | |
| 19 | n/a |

Order ____ of ____

## IT IS ORDERED:

☐ 25. Notice is to be given to the legal/putative father(s) as required by law. ☐ The father was not present and must appear at the next hearing. ☐ The putative father was present at this hearing and shall establish paternity within 14 days.

☒ 26. The child(ren) is/are continued in the protective/temporary custody of this court, and (Check only a, b, c, or d.)

    ☒ a.   **Jazmine & Jemaria** is/are placed with the department for care and supervision, and

        1) the parent, guardian, or legal custodian shall execute all documents necessary to release confidential information regarding the child(ren) including medical, mental, and educational reports, and shall also, within 7 days, provide the department with the name(s) and address(es) of the medical provider(s) for the child(ren). Any medical provider of the child(ren) shall release the medical records of the child(ren) to the department.

        2) if a home study has not yet been completed, then one shall be performed by the department and a copy of the home study submitted to the court not more than 30 days after the placement.

        3) upon request, the department shall release to the foster parent the information concerning the child(ren) in accordance with MCL 712A.13a(15).

    ☒ b.   **Prophet, Angell & Ebony** remain home with or is/are released to ___mother___ ~~under the supervision of the department.~~ ☐ The following terms and conditions apply to the parent(s), guardian/legal

        custodian: _____

    ☐ c.   the current placement with the department shall continue. The department shall:

        1) conduct a criminal record check and central registry clearance of the residents of the home of the proposed juvenile guardian and submit the results to the court within 7 days.

        2) perform a home study with a copy submitted to the court within 28 days, unless a home study has been performed within the immediately preceding 365 days of this order, in which case, a copy of that home study shall be submitted to the court.

    ☐ d.   placed under guardianship under MCR 3.979(B). (See separate order, form JC91.)

☐ 27. While the child(ren) is/are placed out of the home, the friend of the court shall redirect current support due on behalf of the child(ren) to the person with whom the child(ren) is/are placed as long as that person is not receiving foster care maintenance payments. Unpaid child support that charged during the unfunded placement shall also be redirected unless otherwise assigned.

☐ 28. The department shall comply with MCR 3.967(F).

☐ 29. The department shall initiate proceedings to terminate parental rights to the child(ren) no later than 28 days from the date of this hearing.

☐ 30. ☐ a. The parent(s), guardian, or legal custodian shall comply with, and benefit from, the case service plan. ☐ In addition,

    ☐ b. The parent(s) need not comply with, and benefit from, the case service plan because parental rights were released pursuant to the adoption code.

    ☐ c. The parent(s) need not comply with, and benefit from, the case service plan because jurisdiction of the court is terminated.

☐ 31. Sibling contact shall be as follows: _____

☐ 32. ☐ a. Parenting time of _____ is

        ☐ unsupervised   ☐ supervised until further order of the court.

        ☐ The department has discretion to allow unsupervised or supervised parenting time by its designee.

    ☐ b. Parenting time of _____ is

        ☐ unsupervised   ☐ supervised until further order of the court.

        ☐ The department has discretion to allow unsupervised or supervised parenting time by its designee.

    ☐ c. Parenting time of _____ is

        ☐ unsupervised   ☐ supervised until further order of the court.

        ☐ The department has discretion to allow unsupervised or supervised parenting time by its designee.

    ☐ d.

Order After Dispositional Review/Permanency Planning Hearing (12/17) Page 5 of 6

Order ____ of ____

CASE NO.: 38832-3/4/5/6/7-NA

PETITION NO.: n/a

IT IS ORDERED: (continued)

*AS TO PROPHET, ANGEL, & EBONY*

[X] 33 Jurisdiction of this court is terminated. The court reserves the right to enforce payments of reimbursement that have accrued up to and including the date of this order. The child(ren) is/are released to _MOTHER_

34. Previous reimbursement orders shall continue.

[ ] 35. Other: (Attach separate sheets as necessary.)

36. Prior orders remain in effect except as modified by this order.

[X] 37. Review hearings shall be held as follows: before [ ] Judge LAURA BAIRD [X] Attorney Referee [ ] Chief Referee
(NOTE: The review hearing shall not be delayed beyond the number of days required regardless of whether a petition to terminate parental rights or another matter is pending. MCL 712A.19a provides that the permanency planning hearing shall not be delayed beyond 12 months from the date of removal of the child and every 12 months thereafter.)
[X] dispositional review hearing _4/21/20  10:00 am_  [ ] permanency planning hearing _____
[ ] dispositional review hearing to terminate jurisdiction under MCR 3.97(C)
The supervising agency shall provide documentation of progress relating to all aspects of the last court-ordered treatment plan, including copies of evaluations and therapy reports and verification of parenting time, not later than 5 business days before the scheduled hearing.

[ ] 38. A hearing to appoint the juvenile guardian under MCR 3.979(B), shall be held _____

39. [ ] Notice of the next hearing has been provided as required by law.    [ ] Notice of the next hearing shall be provided.

Recommended by: _____   Date _2/11/20_

Referee signature

FEB 12 2020

Date

Judge LAURA BAIRD

The following list are examples of compelling reasons for a permanency plan other than return to parent, legal guardianship, placement with a fit and willing relative, or adoption.
1. No relative has been identified who is appropriate or available to assume the permanent custody of the child.
2. The current caregiver is not an adoptive resource.
3. Reasonable efforts to recruit an adoptive home have been unsuccessful.
4. The child does not want to be adopted and is of an age where due consideration must be given to his/her wishes.
5. It is contrary to the child's best interests to break the child's attachment to the current caregivers.
6. The current caregiver is committed to providing a permanent placement for the child.
7. The placement allows the siblings to remain together.
8. The child's special needs can best be met in this placement.
9. The child wants to remain in the current placement, which is only available as foster care.
10. The placement is preparing the child for transition into independent living (specify the services being provided to the child to assist with transition such as referral to an independent living skills program, enrollment in a vocational program, referral for a mentor, continued out-of-home placement in foster care beyond age 18 to allow the child to complete secondary school, placement in a resource that provides on-site training for independent living, and other similar services).
11. The child comes under the Indian Child Welfare Act and Michigan Indian Family Preservation Aid, and the child's tribe recommends permanent placement in long-term foster care.
12. Other (specify in the findings in item 17e).

| Order After Dispositional Review/Permanency Planning Hearing (12/17) Page 6 of 6 | CASE NO.: 38832-3/4/5/6/7-NA |
| Order ___ of ___ | PETITION NO.: n/a |

Copies:
☐ Chastity Morse, Mother/Plcmt. "3,4 & 7"
☐ Gemar Morgan, Father
☐ Brian T. Richards, Atty./Mother
☐ Mary Addison, Atty./Father
☐ Michael Staake, Lawyer/GAL
☐ Amy North, FCW/Ennis Center for Children
☐ MDHHS
☐ APA
☐ Placement "5 & 6"

## NOTICE

You have the right to participate at the next hearing. Any written information which you wish to have considered by the Court must be submitted in advance to the Court, the agency and the attorneys seven (7) days before the hearing. The court may exclude any exhibit unless good cause is shown. Costs may be assessed if the case service plan is not served seven (7) days before the hearing. In the case of a Permanency Planning Hearing, proceedings may result in termination of your parental rights.