```
1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF MICHIGAN
2                          SOUTHERN DIVISION

3      United States of America,

4                    Plaintiff,

5      -v-                                   Case No. 19-20259

6      Gemar Morgan,

7                    Defendant.
       _____/
8

9                          VOLUME TWO

10          BEFORE THE HONORABLE DAVID M. LAWSON
                 United States District Judge
11        Theodore Levin United States Courthouse
                 231 West Lafayette Boulevard
12                    Detroit, Michigan
                      November 6, 2019
13

14     APPEARANCES:

15     FOR THE PLAINTIFF:    DAWN ISON
                             ROBERT VAN WERT
16                           United States Attorney's Office
                             211 West Fort Street, Suite 2001
17                           Detroit, Michigan  48226

18     IN PRO PER:           GEMAR MORGAN

19     FOR THE DEFENDANT     MARGARET S. RABEN
       AS STANDBY COUNSEL:   Gurewitz & Raben, PLC
20                           333 West Fort Street, Suite 1400
                             Detroit, Michigan  48226
21

22

23

24          To Obtain a Certified Transcript Contact:
            Rene L. Twedt, CSR-2907, RDR, CRR, CRC
25                  www.transcriptorders.com
```

1                        TABLE OF CONTENTS

2    MATTER                                                    PAGE

3    DISCUSSION RE: EVIDENCE DEFENDANT WISHES TO PRESENT
     Argument By Defendant Morgan.............................  32
4    Argument By Mr. Van Wert................................  32
     Argument By Defendant Morgan.............................  32
5    Argument By Ms. Raben....................................  33
     Ruling By The Court......................................  35
6

7    GOVERNMENT RESTS.........................................  37

8


9    DEFENDANT'S CASE-IN-CHIEF

10   OFFERING OF SUPERVISED RELEASE PAPERWORK
     Argument By Defendant Morgan.............................  38
11   Argument By Mr. Van Wert................................  38
     Ruling By the Court......................................  38
12

13   DEFENSE RESTS............................................  38

14   PRELIMINARY FINAL INSTRUCTIONS..........................  39

15   CLOSING ARGUMENTS
     Closing Argument By Mr. Van Wert........................  57
16   Closing Argument By Defendant Morgan....................  64
     Rebuttal Argument By Mr. Van Wert.......................  80
17

18   FINAL JURY INSTRUCTIONS..................................  81

19   JURY VERDICT.............................................  90

20

21   CERTIFICATE OF COURT REPORTER...........................  94

22

23

24

25

```
 1   Detroit, Michigan
 2   November 6, 2019
 3   11:56 a.m.
 4                            *      *      *
 5          THE CLERK:  All right.  Good morning, counsel.
 6          The record should reflect that the parties and
 7   attorneys are present.  The jury is not present.
 8          Mr. Morgan, did you receive a copy of the proposed
 9   jury instructions?
10          DEFENDANT MORGAN:  Yes.
11          THE COURT:  Very well.  Have you gone over them?
12          DEFENDANT MORGAN:  Yes.
13          THE COURT:  Mr. Morgan, you should stand when you
14   address the Court.
15          DEFENDANT MORGAN:  Yes.
16          THE COURT:  I'm going to review them with you and
17   invite the Government also to speak up in the event you have
18   objections.
19          Mr. Morgan, on page -- actually, since you have to
20   read that, go ahead and have a seat and we can do it that way.
21          Have you been through pages 1 through 6?
22          DEFENDANT MORGAN:  Yes.
23          THE COURT:  Do you have any objections you would like
24   to note for the record?
25          DEFENDANT MORGAN:  Yes.
```

```
 1                  THE COURT:  Go ahead.

 2                  DEFENDANT MORGAN:  On page 3, paragraph 2, I have a

 3      few objections.

 4                  THE COURT:  Go ahead.

 5                  DEFENDANT MORGAN:  It look like the first sentence,

 6      the jury is not instructed on a decision as the word "decide"

 7      is mentioned.  And then, also, this prejudices the jury from

 8      properly deciding the case up under Federal Rules of Evidence

 9      403 and the Fourteenth Amendment.

10                  THE COURT:  I'm sorry, I'm not following you.  Are

11      you looking at page 3?

12                  DEFENDANT MORGAN:  Yes.

13                  THE COURT:  Paragraph 2?

14                  DEFENDANT MORGAN:  Yes.

15                  THE COURT:  And what language are you pointing to?

16                  DEFENDANT MORGAN:  Where -- I'll just read it.

17                  THE COURT:  Go ahead.

18                  DEFENDANT MORGAN:  "Your duty is to take the law

19      that I give you, apply it to the facts, and decide if the

20      Government has proved the Defendant guilty beyond a reasonable

21      doubt."

22                  That part where it say, prove the Defendant guilty

23      as a reasonable doubt, I believe, is a violation of the

24      Fourteenth Amendment and Federal Rules of Evidence 403, due to

25      the fact that the jury is not instructed on a decision, as the
```

1    word "decide" is mentioned.  And then it also prejudices the

2    jury from properly deciding the case.

3              THE COURT:  All right.  That objection is overruled.

4              Do you have any other objections through page 6?

5              DEFENDANT MORGAN:  Yeah.  I got some on the same page

6    at the bottom.

7              THE COURT:  Same page, number 3?

8              DEFENDANT MORGAN:  Yes.

9              THE COURT:  Okay.  Go ahead.

10             DEFENDANT MORGAN:  The prejudice --

11             THE COURT:  You have to just point me to some

12   language first.

13             DEFENDANT MORGAN:  Excuse me?

14             THE COURT:  You have to point to the language you

15   want to address.

16             DEFENDANT MORGAN:  Oh, okay.  It say, "But if what

17   they say is different from what I say, you must follow what

18   I say.  What I say about the law controls."

19             THE COURT:  That's in paragraph 3?

20             DEFENDANT MORGAN:  Yes.

21             THE COURT:  Okay.  And what about -- what's your

22   objection to that?

23             DEFENDANT MORGAN:  It prejudice the jury from

24   deciding the case as they are instructed as a jury to uphold

25   as their duty in the court in violation of the Fourteenth

```
 1     Amendment and Federal Rules of Evidence 403.

 2              THE COURT:  Okay.  That objection also is overruled.

 3              Do you have any other objections on page 3?

 4     DEFENDANT MORGAN:  No.

 5              THE COURT:  All right.  What about 4, 5, or 6?

 6     DEFENDANT MORGAN:  Page 4.

 7              THE COURT:  Okay.

 8     DEFENDANT MORGAN:  You must --

 9              THE COURT:  What paragraph number are you looking at?

10     DEFENDANT MORGAN:  Paragraph 3, 4, and 5.

11              THE COURT:  Okay.  Go ahead.  What's your objection?

12     DEFENDANT MORGAN:  The objection to this is:  "You

13     must find the Defendant not guilty unless the Government

14     convince you beyond a reasonable -- reasonable doubt that he

15     is guilty."

16              Right here I put, this should be 2.  This should have

17     been, you know, the same phrase that should have been -- this

18     should have been -- rephrased in 2 on page 3, because it gave

19     the -- it give the jury a decision to decide from.

20              THE COURT:  Well, that paragraph 3 on page 4 covers

21     that and the jury will have to take the instructions as a

22     whole, so that objection is overruled.

23     DEFENDANT MORGAN:  Okay.

24              THE COURT:  What else on page 4?

25     DEFENDANT MORGAN:  Like the -- what's that, one,
```

Jury Trial - Volume 2 - November 6, 2019

1    two -- look like the third sentence in paragraph 4, this is

2    confusing and a waste of time.  "Possible doubts or doubts

3    based purely on" -- "purely on speculation are not reasonable

4    doubts."

5            I believe the definition of beyond a reasonable

6    doubt, you know, clearly explains exactly, you know, what is

7    required for the jury in case they need to return a guilty

8    verdict, so I believe this violate Federal Rules of Evidence

9    Rule 403 as confusing and a waste of time.

10            THE COURT:  All right.

11            DEFENDANT MORGAN:  Possible doubts.

12            THE COURT:  Do you have a response to that?

13            MR. VAN WERT:  Yes, your Honor.

14            Quite frankly, this is the instruction based upon a

15    pattern jury instruction that's given in every criminal case

16    that I have been a part of.  I think it's proper and it

17    correctly phrases the term, reasonable doubt.  It properly

18    instructs the jury and should be given.

19            THE COURT:  All right.  The instruction does

20    accurately state the law, and therefore, I will overrule the

21    objection.

22            Do you have any more objections with respect to

23    page 4?

24            DEFENDANT MORGAN:  Yes.  Number 5.

25            THE COURT:  Okay.

1          DEFENDANT MORGAN:  I mean, I'm sorry, paragraph 5.

2          THE COURT:  Right.

3          DEFENDANT MORGAN:  "Proof beyond a reasonable doubt

4    means proof that is" -- "that is so convincing that you would

5    not hesitate to rely and act on it in making the most

6    important decision in your own lives."

7          This is defined in number 4, paragraph number 4,

8    Federal Rules of -- it violates Federal Rules of Evidence

9    Rule 403, confusing and waste of time.

10          And then it also -- what's this -- waste of time

11    and -- oh, as defined in paragraph 3 and 4.  This is

12    convincing the jury psychologically by, you know, continually

13    stating the phrase, you know, guilty beyond a reasonable

14    doubt, reasonable doubt, without giving them a decision just

15    in case if they found the guilt -- I mean, the Defendant not

16    guilty.

17          THE COURT:  All right.  Paragraph 5 accurately states

18    the law.  Frankly, it's an instruction that is intended to

19    benefit a defendant, or at least it usually works out that

20    way, and so I'll overrule that objection.

21          What about page 6?

22          DEFENDANT MORGAN:  Page -- well, it was on page 5

23    where it -- you know, once again, this states "reasonable

24    doubt, say so by returning a guilty verdict."  You know, I

25    thought that was a rehearsal of psychologically planting the

1    seed inside the jury's mind state.  It don't give -- it don't

2    give the jury the option to, you know, decide between finding

3    a person guilty upon a reasonable doubt and, you know, not

4    finding a person guilty.

5              THE COURT:  That's what the next sentence says.

6              DEFENDANT MORGAN:  Yeah.

7              THE COURT:  So that objection is overruled.

8              Page 6?

9              DEFENDANT MORGAN:  Yes.  "The evidence in this case

10   only" -- "the case includes only what the witness said while

11   they were testifying under oath and the exhibits that I

12   allowed into evidence."

13             I believe that violates Federal Rule of Evidence 403,

14   confusing the psychological aspect of the jury and their job

15   and their duty.  The phrase in number 3, paragraph 3, "nothing

16   else is evidence," I believe that violate Federal Rules of

17   Evidence 403, confusing -- confusing with a testimony the jury

18   has a specific job and duty.

19             "The lawyers' and Mr. Morgan's statements and

20   arguments are not evidence," I really didn't -- I just got

21   it underlined.

22             But, "The questions and objections are not evidence,

23   my rulings are not evidence, and my comments and questions are

24   not evidence."  I thought that should have been deleted.

25             THE COURT:  Well, that actually accurately states the

1    law, so I will overrule that objection.

2              DEFENDANT MORGAN:  Okay.  Number 4, paragraph 4.

3    Okay.

4              THE COURT:  What about page 7?

5              DEFENDANT MORGAN:  Oh, I'm still on 6.

6              THE COURT:  What's -- there is only one paragraph

7    left that says, "Make your decision based on the evidence."

8    You have an objection to that?

9              DEFENDANT MORGAN:  I was at paragraph 4.

10             THE COURT:  Well, I just ruled that paragraph 4

11   accurately states the law, so any objections to paragraph 4

12   are overruled.

13             DEFENDANT MORGAN:  Okay.

14             THE COURT:  On paragraph 7, I intend to change the

15   language from "whether Mr. Morgan was a prohibited person" to

16   "whether the Defendant was convicted in a court of law of a

17   crime that was punishable by more than one year and he knew

18   that he had been convicted of a crime that was punishable by

19   more than a year in prison," rather than simply say that

20   Mr. Morgan was a prohibited person.  That basically defines

21   the question in terms of what the statute requires.

22             Do you have any objections to paragraph -- to page 7

23   or page 8?

24             DEFENDANT MORGAN:  Yeah, I did.  Where it is

25   saying, "This case you heard evidence that Mr. Morgan

Jury Trial - Volume 2 - November 6, 2019

1   was previously" -- "previously was convicted of crimes."

2          Basically, you know, notated that up under Federal

3   Rules of Evidence 403 as giving ideas into the jury and duty,

4   giving specific ideas to the jury, to the jury duty as a job

5   and create prejudice.

6          THE COURT:  All right.  That objection is overruled,

7   especially -- and I had not made this comment before -- but

8   Rule 403 does not apply to jury instructions.  Rule 403

9   applies only to the admission or exclusion of evidence during

10  the proof part of the trial.

11         Do you have any objections to anything on page 8?

12     (Discussion held off the record at 12:08 p.m.)

13         THE COURT:  Page 8?

14         Hearing none, Mr. Morgan, do you have any objections

15  on anything on page 9 or 10?  9, 10, or 11?

16         DEFENDANT MORGAN:  Yeah.  Page 9.

17         THE COURT:  All right.

18         DEFENDANT MORGAN:  Oh, well, no.  I said that was a

19  perfect example of a proper jury instruction, so I didn't

20  really have no objection to that.

21         THE COURT:  Page 10 and 11?

22         DEFENDANT MORGAN:  Oh, yeah.  Paragraph G, and this

23  look like the one, two, third paragraphs to the bottom.

24         "If you believe that a witness testimony was

25  contradicted by other evidence, remember that people sometimes

1   forget things and that even two honest peoples who witness the

2   same event may not describe it exactly the same way."

3          I think that was a violation of the Fourteenth

4   Amendment due to the fact that it's basically, you know,

5   commanding and giving the jury an order.

6          THE COURT:  All right.  I will overrule that

7   objection because the instruction accurately states the law.

8          On page 12, do you have any objection to that?

9          DEFENDANT MORGAN:  Oh, wait, that's 10.  13.

10         THE COURT:  Okay.  Nothing on 12.

11         What about 13?

12         MS. RABEN:  Gemar.

13         DEFENDANT MORGAN:  No.

14         THE COURT:  Page 14, any objection to that?

15         DEFENDANT MORGAN:  Oh, I did say 13.

16         MS. RABEN:  What's your objection on 13?

17         DEFENDANT MORGAN:  "Remember that your decision must

18  be based only on the evidence that you saw and heard" -- hold

19  up.  Let me make sure.

20         Oh, no, that wasn't no objection.

21         THE COURT:  All right.  And no objection to 14,

22  either?

23         DEFENDANT MORGAN:  No.

24         THE COURT:  Okay.  Paragraph 15, I think you had

25  asked that the statute be included in the jury instructions.

1    DEFENDANT MORGAN:  Yes, I did have an objection to

2    that.

3        THE COURT:  You have an objection?

4        DEFENDANT MORGAN:  Yes.

5        THE COURT:  What's your objection?

6        DEFENDANT MORGAN:  Where, you know, it explains, you

7    know, the shipping, transport, possession, and receiving part

8    of the statute and I just -- and I was, you know, requesting

9    that the jury, you know, receive only the possession part of

10   that statute, so.

11       THE COURT:  I can take the other language out unless

12   the Government objects.

13       MR. VAN WERT:  What language is he asking to be taken

14   out?

15       THE COURT:  I think where it says "to ship or

16   transport in interstate or foreign commerce," I think he wants

17   that excluded, and the language that would remain is "possess

18   in or affecting commerce any firearm or ammunition," and so

19   forth.  That's what you want?

20       DEFENDANT MORGAN:  Well, really, the first part, just

21   delete where it say receive any firearm or ammunition which

22   has been shipped, like the last part of it.

23       THE COURT:  So the whole statute would read, then,

24   "It shall be unlawful for any person who has been convicted in

25   any court of a crime punishable by imprisonment for a term

1    exceeding one year to possess, in or affecting commerce, any

2    firearm or ammunition."

3              DEFENDANT MORGAN:  That's perfect.

4              MR. VAN WERT:  No objection, your Honor.  That's fine.

5              THE COURT:  All right.  I'll change that.

6              Any objection to page 16?

7              DEFENDANT MORGAN:  No, your Honor.

8              THE COURT:  Or 17?

9              DEFENDANT MORGAN:  Yes, I did have an objection to 17.

10             THE COURT:  All right.

11             DEFENDANT MORGAN:  The only objection I had to 17,

12   that it kind of confuses and, you know, waste the time of the

13   jury due to the fact that the terminology and the definition

14   and the elements was, you know, detailed on page 16.

15             THE COURT:  Well, page 17 includes the definitions of

16   "knowingly," "firearm," and "in or affecting commerce."  Those

17   terms were really not defined on page 16.  So the instruction

18   accurately reflects the law or accurately states it, so I'll

19   overrule that objection.

20             What about 18?

21             MR. VAN WERT:  Your Honor, I apologize, can we go

22   back to 16 briefly?

23             THE COURT:  Yes.

24             MR. VAN WERT:  The Government was seeking to add some

25   language to paragraph 2 of page 16.

1            THE COURT:  All right.

2            MR. VAN WERT:  Specifically, that evidence that the

3    Defendant Gemar Morgan has -- remove the "a" --  prior --

4            THE COURT:  Oh, make that plural?

5            MR. VAN WERT:  Correct.  Prior felonies.

6            THE COURT:  Well, there was evidence of two felony

7    convictions, so I'll modify that.

8            MR. VAN WERT:  And then later in the sentence, "For

9    purposes of establishing that the Defendant was convicted in

10   a court of a crime punishable by imprisonment for a term

11   exceeding one year, and that the Defendant knew that he had

12   been so convicted," end of sentence.

13           THE COURT:  So you want the knowledge part added,

14   essentially?

15           MR. VAN WERT:  Yes, your Honor.

16           THE COURT:  All right.  Do you have any objection to

17   that, Mr. Morgan?

18           DEFENDANT MORGAN:  Yes.

19           THE COURT:  What's your objection?

20           DEFENDANT MORGAN:  I don't see it on my page.

21           THE COURT:  Well, no, that's -- the Government just

22   asked that we add it.

23           DEFENDANT MORGAN:  Actually, I believe 16 clearly

24   defines the elements of Title 18 U.S.C. subsection 922(g) and

25   to add to it would be confusing and wasting the time of the

1    jury.

2            THE COURT:  All right.  I think that addition

3    proposed by the Government clarifies the law that -- and

4    accurately states it, so I'll overrule the objection and make

5    that modification.

6            I think we're on to 18.  Do you have any objection to

7    18, the instruction on page 18?

8            DEFENDANT MORGAN:  Yes.

9            THE COURT:  What is it?

10           DEFENDANT MORGAN:  The entire paragraph 1 and entire

11   paragraph 5.

12           THE COURT:  All right.  I believe both of those

13   paragraphs which define possession accurately state the law,

14   so those objections are overruled.

15           Page 19, do you have any objection on that?

16           DEFENDANT MORGAN:  Did I get a chance to point out

17   the objections for 18?

18           THE COURT:  You said you objected to both of those

19   and I said that the -- on those two paragraphs, and I said

20   they accurately stated the law, so I overruled your objection.

21           DEFENDANT MORGAN:  Oh.

22           THE COURT:  What about page 19?

23           DEFENDANT MORGAN:  Yeah.  The entire page is a

24   violation of the Fourteenth Amendment.  It contradict,

25   prejudice.  It cause confusion.  It's rehearsing harm, error,

1    abuse, and prejudice.  Page 16 define Elements A through D.

2         THE COURT:  All right.  Page -- the instruction on

3    page 19 that talks about proving a defendant's state of mind

4    accurately states the law, and I'll overrule that objection.

5         Do you have any objection on page -- to the

6    instruction on page 20?

7         DEFENDANT MORGAN:  Yes.

8         THE COURT:  What is that?

9         DEFENDANT MORGAN:  The entire page.  It's a rehearsal

10   ordering harm, error, prejudice, and abuse.  Page 16 clearly

11   define exactly what is alleged.  This is assisting the

12   prosecutor to order the jury to do a specific job.  This is

13   confusing and added on, a waste of time.

14        THE COURT:  All right.  That objection is overruled

15   also because the instruction accurately states the law.

16        Now, going to page 21, there is some language that we

17   have to add because the -- there was proof in the case of both

18   a state conviction and a federal conviction.

19        There is some state law regarding having your state

20   rights restored.

21        DEFENDANT MORGAN:  Right.

22        THE COURT:  However, I'm not sure that that even

23   applies.

24        MR. VAN WERT:  Your Honor, the research I did,

25   specifically Beecham v. United States, a Supreme Court case

1    from 1994 which deals with the fact that the defendant there

2    was convicted of some state law convictions, I believe, in

3    West Virginia, then he also had a federal conviction.  He was

4    later charged with a 922 offense.  The Court, the Supreme

5    Court said that essentially the defendant there had his rights

6    restored by the State of West Virginia but not federally.  So

7    the Court ignored his state convictions and dealt only with

8    his prior federal conviction.  There is also an unpublished --

9              THE COURT:  So what's that have to do with it?

10             MR. VAN WERT:  So basically what the Supreme Court

11   said there, the Supreme Court recognized the fact that that

12   defendant had his state rights restored, so they ignored his

13   prior state felony convictions and dealt only with the fact

14   that he had also had a federal conviction.

15             THE COURT:  Well, how does that have any bearing on

16   whether or not restoration of rights under state law also

17   authorizes someone to possess a firearm under federal law?

18             MR. VAN WERT:  Well, that -- that decision, the

19   Beecham decision, was then cited by the U.S. Supreme Court

20   in -- or the U.S. Court of Appeals in the Sixth Circuit, and

21   granted an unpublished opinion, in United States versus Lang.

22             THE COURT:  What year was that?

23             MR. VAN WERT:  That was in 2002, your Honor.  It was

24   an appeal from the Eastern District of Michigan.  The Court

25   there said, quote, "For Lang's federal convictions, we looked

1    to whether his rights had been restored under federal law.

2    For his state convictions we looked to whether his rights had

3    been restored by the convicting state."

4        So essentially, what the -- what the Court did there,

5    the Court of Appeals did there is they applied the Beecham

6    decision in a case like this where a defendant has prior

7    disqualifying felony convictions from the state and also a

8    prior disqualifying felony conviction from the federal

9    government.  And the Court there applied Michigan law to

10   determine whether the rights had been restored in the state

11   convictions and applied federal law to determine whether his

12   rights had been restored pursuant to his federal conviction.

13       THE COURT:  Well, I'm not sure that that's an

14   accurate statement of the law, but I take it that you're

15   exercising caution and would like an instruction to the jury

16   that they can also consider whether Mr. Morgan's rights under

17   state law have been restored?

18       MR. VAN WERT:  Absolutely, your Honor.  Thank you.

19       THE COURT:  And I take it you would like that?

20       DEFENDANT MORGAN:  Excuse me?

21       THE COURT:  I take you would like that also,

22   Mr. Morgan?

23       DEFENDANT MORGAN:  What, that -- the process of

24   restoring the rights up under state law?

25       THE COURT:  Right.

```
1          DEFENDANT MORGAN:  Yes.  That's what I asserted,
2     attempted asserted yesterday.
3          THE COURT:  I will give the jury that instruction.
4          MR. VAN WERT:  Thank you, your Honor.
5          DEFENDANT MORGAN:  Excuse me.
6          THE COURT:  Do you have any other comments with
7     respect to the instruction on page 21?
8          DEFENDANT MORGAN:  I got a question.
9          THE COURT:  Yes.
10         DEFENDANT MORGAN:  Would the jury be instructed on
11    the Michigan Compiled Laws 750.224f?
12         THE COURT:  Yes.
13         DEFENDANT MORGAN:  Okay.
14         THE COURT:  Yes.  Also, however, the burden of
15    proving that your rights were restored is on you, and I'm
16    going to instruct the jury that although they don't have to
17    find beyond a reasonable doubt that you proved that your
18    rights were restored, they do have to find that you were able
19    to sustain your burden that it was more likely than not that
20    your rights were restored.  Yes.
21         DEFENDANT MORGAN:  Quick question.  If -- if my ex --
22    I had a supervised release officer in this building that had
23    the documents for that.  If Ms. Raben can retrieve that
24    information from Patricia Trevino, could I submit it to the
25    courts where I had my rights restored through the State of
```

1    Michigan and through the Department of Homeland Security and

2    TSA?

3              THE COURT:  Ms. Raben, do you have -- do you know

4    what documents he is referring to?

5              MS. RABEN:  I know what he is talking about.

6    Mr. Morgan, while he was on supervised release to the Western

7    District of Michigan, was actually supervised here in the

8    Eastern District of Michigan and he said that he gave these

9    documents about his TSA --

10         (Discussion held off the record at 12:23 p.m.)

11             MS. RABEN:  Okay.  All right.  He is correcting me.

12             That TSA sent Probation these documents.  I contacted

13   Patricia Trevino to ask about them.  She is now doing Pretrial

14   Services, not supervised release, so she did not have access

15   to the file.  She forwarded it to Anthony Merolla to ask him.

16   Mr. Merolla has not responded to me whether or not they have,

17   in their files, any of these documents.

18             THE COURT:  So the documents would be in a file

19   regarding Mr. Morgan's 2006 conviction in the Western District

20   and his supervision following his custody term?

21             MS. RABEN:  Well, I can't say that they are in the

22   Western District file, but Mr. Morgan --

23             THE COURT:  I didn't say that they were in a Western

24   District file.

25             MS. RABEN:  -- produced -- had them produced.

1    Mr. Morgan says TSA or Homeland Security sent something to

2    Probation here.

3              THE COURT:  In connection with his supervision on the

4    Western District conviction?

5              DEFENDANT MORGAN:  Yes.  Yes.

6              THE COURT:  All right.  And was that a courtesy

7    supervision or was it --

8              MS. RABEN:  I'm assuming so, because he was living in

9    the Eastern District.

10             THE COURT:  Ms. Raben, don't talk while I'm talking.

11             MS. RABEN:  I'm sorry, sir.

12             THE COURT:  Was that a courtesy supervision or was

13   jurisdiction transferred here, if you know?

14             MS. RABEN:  I don't know that.

15             THE COURT:  All right.

16             DEFENDANT MORGAN:  Before I got out the jurisdiction

17   was transferred to the Eastern District, because that was my

18   address.  But what happened with the TSA and the Homeland

19   Security paperwork, Patricia Trevino supervised at that time,

20   had requested it, requested the information from TSA and

21   Homeland Security because they didn't understand -- you know,

22   they had got a red flag, thought I went across country.  But

23   I had to do the background clearance in order to receive my

24   rights, and due to the background clearance, that's how the

25   communication between Patricia Trevino's supervisor and TSA

```
 1    and Homeland Security connected.
 2               THE COURT:  Well, I will ask Ms. Raben to go upstairs
 3    to the Probation Department and see if she can find the file
 4    on your supervision, and if that's the case and there are
 5    documents in there that you would like to look at, we will
 6    make a decision about whether you want to offer any of them
 7    into evidence.
 8               MS. RABEN:  Shall I do that now?
 9               THE COURT:  No.  Wait until we're finished here.
10               Now, do you have any further comments with respect to
11    the instructions on page 21?
12               DEFENDANT MORGAN:  No, your Honor.
13               THE COURT:  All right.  Page 22 asks about whether I
14    am going to explain to the jury what your theory of the
15    defense is.
16               Mr. Morgan, I propose to tell the jury this:
17    "Defendant Gemar Morgan contends that he is not guilty of the
18    crime with which he is charged.  He maintains that his rights
19    to possess a firearm were restored by law."
20               Is that sufficient?
21               DEFENDANT MORGAN:  Yes.
22               THE COURT:  All right.
23               DEFENDANT MORGAN:  Got a quick question.
24               THE COURT:  Yes.
25               DEFENDANT MORGAN:  And you say that will be your
```

```
 1    definition to the jury?

 2            THE COURT:  That's what I will tell the jury.

 3            DEFENDANT MORGAN:  Okay.

 4            THE COURT:  Paragraph -- page 23, you have no

 5    objection to that, I presume?

 6            DEFENDANT MORGAN:  No.

 7            THE COURT:  Page 24 has two alternate instructions,

 8    one if the Defendant testifies and the one -- and the other if

 9    the Defendant does not testify.

10            Have you made a decision, Mr. Morgan, about whether

11    you intend to testify?

12            DEFENDANT MORGAN:  Yes.

13            THE COURT:  What's your decision?

14            DEFENDANT MORGAN:  I will not.

15            THE COURT:  All right.  So I'll give the first

16    paragraphs -- two paragraphs on that page, and delete the

17    second two on page 24.  All right?

18            DEFENDANT MORGAN:  Yes, your Honor.

19            THE COURT:  Okay.  And do you have any objection to

20    the instruction on page 25 that talks about your right to

21    represent yourself?

22            DEFENDANT MORGAN:  No, your Honor.

23            THE COURT:  All right.  Page 26, do you have any

24    objection to that?

25            DEFENDANT MORGAN:  No, your Honor.
```

1          THE COURT:  Page 27, since you have not testified,

2     that instruction is not applicable, so I'll delete that.

3          Page 28, there is a suggestion that both Mr. Salazar

4     and Mr. Weston provided opinion testimony and fact testimony,

5     and so I'll substitute an instruction that the jury has to

6     deal with those two witnesses both as fact witnesses and

7     opinion witnesses, and that they are free to disregard the

8     opinion if they don't think it holds up.  Is that acceptable?

9          DEFENDANT MORGAN:  Yes, your Honor.

10          THE COURT:  All right.  Do you have any objection

11     to pages -- instruction on pages 29 or 30?

12          DEFENDANT MORGAN:  No, your Honor.

13          THE COURT:  All right.  After the instruction on

14     page 30, I will stop and that will be the chance for the

15     parties and you to give your closing arguments.

16          I think with respect to the closing arguments, the

17     Government will have 20 minutes.

18          MR. VAN WERT:  Yes, your Honor.

19          THE COURT:  And I'll give you 20 minutes.  All right?

20          DEFENDANT MORGAN:  Okay.

21          THE COURT:  31, any objection to paragraph -- to

22     page 31?

23          DEFENDANT MORGAN:  No, your Honor.

24          THE COURT:  32?

25          DEFENDANT MORGAN:  No, your Honor.

```
 1              THE COURT:  33?

 2              DEFENDANT MORGAN:  Yes, your Honor.

 3              THE COURT:  All right.

 4              DEFENDANT MORGAN:  Page -- oh, wait.  33?  You say 33?

 5              THE COURT:  Yes.

 6              DEFENDANT MORGAN:  No.  No.

 7              THE COURT:  How about 34?

 8              DEFENDANT MORGAN:  Yes.

 9              THE COURT:  All right.  What's your objection to that?

10              DEFENDANT MORGAN:  Page 34 fails to state all

11     elements of the indictment listed on page 16 where it can

12     cause harm, error, abuse, and prejudice.

13              THE COURT:  Well, it just says that the jury's

14     verdict has to be unanimous.  In other words, all of them have

15     to agree before they can return a guilty or a not guilty

16     verdict.

17              DEFENDANT MORGAN:  Okay, your Honor.

18              THE COURT:  So you have no objection to 34?

19              DEFENDANT MORGAN:  No.

20              THE COURT:  All right.  What about 35?

21              DEFENDANT MORGAN:  Yeah.  At Number 4 on 35, I think

22     it was prejudice due to the fact that it only gave the jury

23     one option.

24              THE COURT:  Well, it says, "Listen carefully to what

25     you want the other" -- "to what the other jurors have to say
```

1    and then decide for yourselves if the Government has proved

2    the Defendant guilty beyond a reasonable doubt."

3              DEFENDANT MORGAN:  It's accepted, your Honor.

4              THE COURT:  All right.  Any objection to page 36?

5              DEFENDANT MORGAN:  Yeah.  The beginning, "If you

6    decide the Government has proved the Defendant guilty then it

7    will be my job to decide what appropriate punishment should

8    be," and I believe that was a rehearsal from page 35 because

9    that basically just repeated number 4 on page 35.

10             THE COURT:  All right.  But that accurately states

11   the law and it tells the jury that punishment is not part of

12   their decision, so I'll overrule that objection.

13             Do you have any objection to page -- the instructions

14   on page 37 or 38?

15             DEFENDANT MORGAN:  Yeah.  It then instruct the jury

16   on what to do if they found me not guilty in paragraph 2.

17             THE COURT:  Yes, it does.  It says, "If you decide

18   the Government has not proved the charge against the Defendant

19   beyond a reasonable doubt, say so by having your foreperson

20   mark the appropriate place on the form."

21             DEFENDANT MORGAN:  Okay.  I didn't see "not guilty."

22   I just seen "guilty."  I was -- I was -- I seen "guilty," so

23   it made me, you know, actually look for "not guilty," but it's

24   accepted.

25             THE COURT:  I don't really see "guilty" on this page

1    either.

2            So do you have any objection to page 37?

3            DEFENDANT MORGAN:  No, your Honor.

4            THE COURT:  All right.  38?

5            DEFENDANT MORGAN:  I got a question about 38.

6            THE COURT:  Go ahead.

7            DEFENDANT MORGAN:  It say, "Your job is limited to

8    deciding whether the Government has proved the crime charged."

9            Could you kind of elaborate on what that actually

10   states?

11           THE COURT:  Yes.  It means that the jury can't find

12   you guilty for any other conduct, only the one charged in the

13   indictment.

14           DEFENDANT MORGAN:  Okay.

15           THE COURT:  Do you have any objection to that?

16           DEFENDANT MORGAN:  No.  Unless you can add that

17   phrase, that would be my only objection.

18           THE COURT:  No, well, I think it accurately states

19   the law.

20           What about page 39, do you have any objection to

21   that?

22           DEFENDANT MORGAN:  Yeah.  I just think the last

23   sentence is like a rehearsal.

24           THE COURT:  All right.  I will overrule that

25   objection because it accurately states the law.

1          The verdict form, do you have any --

2          DEFENDANT MORGAN:  Yes.

3          THE COURT:  -- objection to the verdict form?

4          DEFENDANT MORGAN:  Yes.  Right where it say guilty

5    of possession of a firearm after having been convicted of a

6    felony, on page 16, it states the elements and I believe the

7    elements of this, you know, 922(g) should be detailed, you

8    know, up -- below the space for guilty.

9          THE COURT:  Well, I think that summarizes the charge.

10   I can simplify it by just eliminating the crime itself and

11   just put guilty, period.

12         Does the Government have any objection to that?

13   There is only one count in the indictment.

14         MR. VAN WERT:  I think it's proper how it's written.

15         THE COURT:  I do too.

16         MR. VAN WERT:  I would prefer to have the actual

17   crime there so there is no issue down the road.  I think it's

18   appropriate.  I think it's based on the law, and I think it

19   should stay.

20         THE COURT:  All right.  I'll overrule the objection,

21   Mr. Morgan.

22         That concludes the discussion of the jury

23   instructions, I do believe, unless --

24         MR. VAN WERT:  Your Honor.

25         THE COURT:  Don't interrupt me while I'm talking,

1          MR. VAN WERT:  I apologize.

2          THE COURT:  Mr. Morgan, do you have any further

3    comments with respect to the instructions?

4          DEFENDANT MORGAN:  Yes.  Oh, no.  You had overruled

5    on this, so.

6          THE COURT:  Right.  Okay.

7          Now, does the Government have any other comments with

8    respect to any additional instructions or any objections that

9    you didn't raise as we were going through these pages?

10         MR. VAN WERT:  I apologize, your Honor, I do have

11   one, just for clarification purposes, regarding page 21.

12         THE COURT:  21?

13         MR. VAN WERT:  Yes, your Honor.  Mr. Morgan asked

14   about whether the Court was going to instruct on Michigan law

15   MCL 750.224f.  The Court did answer in the affirmative and

16   said yes.  I think the Court should specify that the Court

17   will be instructing on subsection 2 and not subsection 1,

18   though.

19         THE COURT:  Oh, all right.  Yeah.  The instruction

20   will be related to Michigan Compiled Laws 750.224f(2).

21         MR. VAN WERT:  Yes, your Honor.  Thank you.

22         THE COURT:  All right.  Anything -- did you have any

23   other additions that you would like?

24         MR. VAN WERT:  No, your Honor.  Thank you.

25         THE COURT:  Any other objections?

1           MR. VAN WERT:  None.  Thank you, your Honor.

2           THE COURT:  All right.  It's going to take me about

3    half an hour or so to get the binders ready for the jury and

4    then we will start.  I think I'm going to ask the Marshals to

5    take Mr. Morgan back downstairs now and then I'm going to

6    invite the jury to go grab a bite to eat in about 30 minutes

7    and come back.

8           Would you recess court, please?

9           THE CLERK:  Absolutely.

10          All rise.  Court is in recess.

11     (Recess taken from 12:38 p.m. to 2:02 p.m.)

12          THE COURT:  All rise.  Court is back in session.

13          The record should reflect that counsel and the

14   parties are present.  The jury is not present.

15          I have made corrections to the proposed jury

16   instructions based upon the discussion at the charge

17   conference on the record.

18          The Government has not formally rested before the

19   jury and so we will bring the jury in to allow the Government

20   to do that.

21          Mr. Morgan, is it still your intention not to testify?

22          DEFENDANT MORGAN:  Yes.

23          THE COURT:  All right.  And will you have any

24   evidence to offer?

25          You should stand when you address the Court.

1           DEFENDANT MORGAN:  Yes.  Basically this certificate

2      of rehabilitation discharge from supervised release back in

3      2014.

4           THE COURT:  From the Western District of Michigan?

5           DEFENDANT MORGAN:  Eastern District of Michigan.

6           MS. RABEN:  Your Honor, in response to your question

7      earlier, jurisdiction was transferred here under Rule 5.

8           THE COURT:  Okay.

9           MS. RABEN:  So his supervision has a separate case

10     number of 13-cr-20907-1 here in the Eastern District.

11          THE COURT:  All right.  Have you seen the certificate?

12          MR. VAN WERT:  No, your Honor.

13          THE COURT:  Would you like to take a look at it?

14          MR. VAN WERT:  Yes, your Honor.

15          Your Honor, I have reviewed the -- it's essentially

16     as Mr. Morgan specified.  It's a statement discharging him

17     from supervised release on his prior felony or federal felony.

18     I don't understand -- we have an objection.  I don't see how

19     it's relevant to any issues in the case today.  It does not

20     purport to restore any of his rights.  It does not purport to

21     give him the right to possess a firearm.  It merely terminates

22     his supervised release term.

23          THE COURT:  So what's the relevance?

24          DEFENDANT MORGAN:  Well, it was based on actually the

25     documentations that Probation had in pertaining to the TSA and

1    Department of Homeland Security paperwork, but --

2         THE COURT:  Well, I'm told that the Probation

3    Department didn't have any such documents.

4         DEFENDANT MORGAN:  That's what she is going through

5    now.

6         THE COURT:  Ms. Raben, did you visit the Probation

7    Office today?

8         MS. RABEN:  I did.  And I was able to meet with

9    Mr. Anthony Merolla.  Mr. Merolla had to get permission from

10   Judge Cohn to allow, because Judge Cohn was Mr. Morgan's

11   supervising judge.  So we had to get permission from Judge

12   Cohn for him -- for Mr. Merolla to print out the records that

13   Probation has.

14        THE COURT:  Well, you got that permission; right?

15        MS. RABEN:  I did have that, yes.  And what -- I have

16   reviewed the records and it's clear that Mr. Morgan spoke to

17   then Probation Officer Patricia Trevino about getting a hazmat

18   certificate.  He needed either a discharge from probation,

19   discharge from release, or a letter of rehabilitation from

20   her.

21        She never wrote a letter of rehabilitation.  He was

22   discharged early from supervised release, and then their

23   supervision ends, and there is no other documentation.

24        THE COURT:  All right.

25      (Discussion held off the record at 2:05 p.m.)

 1          MS. RABEN:  Well, my client -- Mr. Morgan says she
 2   did write a letter.  There is no letter documented in the
 3   Probation printout.
 4          THE COURT:  All right.
 5          MS. RABEN:  Mr. Merolla checked.
 6          THE COURT:  In the file was there a commercial
 7   driver's license or an enhanced commercial driver's license?
 8          DEFENDANT MORGAN:  Hazardous material endorsement,
 9   yes.
10          MS. RABEN:  There is no driver's license in their
11   file because they must destroy that information when
12   supervision ends.  It's clear, though, that Mr. Morgan is
13   working as a long-distance trucker and traveling outside of
14   the state of Michigan because he sends his routes for every
15   trip to Ms. Trevino and she documents his routes.
16          THE COURT:  Sends current or used to send?
17          MS. RABEN:  Used to send, yes, while he was on
18   supervision.
19          THE COURT:  Right.  So the reason I ask is because
20   there would be no reason for him to do that now if he is no
21   longer on supervision.
22          MS. RABEN:  No.  But while he was on supervision and
23   working as a long-distance trucker, he was providing her with
24   the -- his routes.
25          THE COURT:  All right.  Does -- were there any -- was

1    there any paperwork that suggested in any form or fashion that

2    Mr. Morgan's right to possess a firearm was restored?

3            MS. RABEN:  No.

4            THE COURT:  All right.  Thank you.

5            I don't see that the document discharging you early

6    from supervised release has any relevance in the case,

7    Mr. Morgan, so I would refuse that.

8            That's now on the record.  You can have that issue,

9    if you like.

10           Would you be offering any other evidence?

11           DEFENDANT MORGAN:  So far, that's all I have right

12   now.

13           THE COURT:  All right.  Thank you.  Are you ready for

14   the jury?

15           MR. VAN WERT:  Yes, your Honor.

16           Judge, just for clarification, for closing arguments,

17   I do have a short PowerPoint.  I began showing that to

18   Mr. Morgan so he could review it.  It consists of some

19   snippets of the jury instructions, along with portions of the

20   exhibits that were already admitted.

21           I believe we got through approximately half of the

22   slides.  If Mr. Morgan could have maybe two minutes to go

23   through the rest before the jury comes in, so we can roll

24   right into closing.

25           THE COURT:  How many more slides are there?

```
1              MR. VAN WERT:  Five or six.
2              THE COURT:  All right.  Have him take a look at them
3   now.
4              MR. VAN WERT:  Thank you, your Honor.  They are on
5   the screen right now.
6              THE COURT:  All right.
7      (Discussion held off the record at 2:09 p.m.)
8              THE COURT:  Mr. Morgan, have you finished looking at
9   those PowerPoint slides?
10             DEFENDANT MORGAN:  This one, yeah.
11             THE COURT:  How about the rest?
12             DEFENDANT MORGAN:  What page is this?
13             MR. VAN WERT:  It's the same as Slide Number 4.
14             DEFENDANT MORGAN:  You can go to the next one.
15             MR. VAN WERT:  That's the last one.
16             THE COURT:  I'm not going to permit you to use that
17   slide on reasonable doubt.  It selectively takes snippets and
18   it doesn't give the complete definition.
19             MR. VAN WERT:  Thank you, your Honor.  I'll delete it.
20             THE COURT:  All right.  Is the Government ready for
21   the jury?
22             MR. VAN WERT:  Yes, your Honor.  Thank you.
23             THE COURT:  Mr. Morgan, are you ready for the jury?
24             DEFENDANT MORGAN:  Yes.
25             THE COURT:  All right.  Bring the jury in, please.
```

```
 1              THE CLERK:  All rise for the jury.

 2         (Jury entered courtroom at 2:13 p.m.)

 3              THE COURT:  You may be seated.

 4              Good afternoon, ladies and gentlemen.

 5              JURORS:  Good afternoon.

 6              THE COURT:  Let me first apologize for the delay in

 7    getting started this morning.  It is entirely my fault.  I was

 8    overly optimistic about the time it would take us to cover

 9    some legal issues, but now those are behind us and we can

10    continue and still get this case to you today so that you can

11    deliberate on it for however long you choose to take.

12              When we completed our day yesterday the Government

13    had called a witness, Mr. Weston, and had not rested its case.

14              Does the Government have any further witnesses or

15    evidence to offer?

16              MR. VAN WERT:  No, your Honor.  Thank you.  The

17    Government rests.

18              THE COURT:  Very well.  Mr. Morgan, do you have any

19    evidence to offer at this time?

20              DEFENDANT MORGAN:  Yes.

21              Up under Federal Rule of Evidence Rule 401, test for

22    relevant of evidence, it has any tendency to make a fact

23    more or less probable than it would be without the evidence,

24    according to that rule of evidence, I should be able to

25    present this discharge paper to the jury.
```

1           THE COURT:  No, that's a paper that says that you were
2   on supervised release and supervised release was terminated.
3           DEFENDANT MORGAN:  It was discharged.
4           THE COURT:  Terminated.
5           DEFENDANT MORGAN:  Well, terminated and discharged, I
6   believe on here it say discharged.
7           THE COURT:  All right.  So you finished your term of
8   supervised release.
9           DEFENDANT MORGAN:  Yes.  And I would like to
10  introduce this as evidence for the jury to --
11          THE COURT:  Very well.  The Government has an
12  objection to that, I take it?
13          MR. VAN WERT:  We do, your Honor.  As previously
14  lodged, this is not relevant to any facts material to the
15  crime that's before the jury today.
16          THE COURT:  All right.  Any of the defenses?
17          MR. VAN WERT:  Correct, your Honor.
18          THE COURT:  Very well.  As I indicated earlier,
19  Mr. Morgan, I do find that that's not relevant, and therefore,
20  your -- the objection is sustained.
21          Do you have any other evidence then?
22          DEFENDANT MORGAN:  That's all I have available.
23          THE COURT:  Very well.  So the Defense rests?
24          MS. RABEN:  Do you rest your case?
25          DEFENDANT MORGAN:  Other than any closing argument.

1          THE COURT:  Well, sure.  But do you rest your case at

2    this point with respect to evidence?

3          DEFENDANT MORGAN:  Yes.

4          THE COURT:  Very well.  Thank you.

5          Members of the jury, the proofs are completed.  Now

6    it's time for me to give you preliminary final instructions on

7    the law.  As I promised you, we would -- I will give you those

8    verbally and also in writing.

9          Mr. El Aswad, would you please pass the instructions

10   out to the jury?

11         These are the instructions you will apply in making

12   your determination and deliberating on your verdict.  You can

13   read along with me if you like.  You don't have to.  You can

14   simply listen.  If you wish to take notes on the instructions,

15   feel free to do that.  Those are your individual copies to

16   use.  The only thing that I ask, if you do choose to read

17   along, is that you not read ahead and that you stay with me.

18         So, members of the jury, now it is time for me to

19   instruct you about the law that you are to apply in deciding

20   this case.

21         I will start by explaining your duties and the

22   general rules that apply in every criminal case.

23         Then I will explain the elements or parts of the

24   crime that the Defendant is accused of committing.

25         Then I will explain the Defendant's position.

1          Then I will explain some rules that you must use in

2     evaluating particular testimony and evidence.

3          And last, I will explain the rules that you must

4     follow during your deliberations in the jury room and the

5     possible verdicts that you may return.

6          Please listen very carefully to everything I say.

7          I have given each of you a copy of these instructions

8     for your use while deliberating.  They are available to each

9     of you.  If you have questions about the law or your duties as

10    jurors, you should consult the copy of the instructions as

11    given to you.

12         You have two main duties as jurors.  The first one is

13    to decide what the facts are from the evidence that you saw

14    and heard here in court.  Deciding what the facts are is your

15    job, not mine, and nothing that I have said or done during

16    this trial was meant to influence your decision about the

17    facts in any way.

18         Your second duty is to take the law that I give you,

19    apply it to the facts, and decide if the Government has proved

20    the Defendant guilty beyond a reasonable doubt.  It is my job

21    to instruct you about the law and you are bound by the oath

22    that you took at the beginning of the trial to follow the

23    instructions that I give you, even if you personally disagree

24    with them.  This includes the instructions that I gave you

25    before and during the trial and these instructions.  All the

1    instructions are important and you should consider them

2    together as a whole.

3          The lawyers and Mr. Morgan may talk about the law

4    during their arguments, but if what they say is different from

5    what I say, you must follow what I say.  What I say about the

6    law controls.

7          Perform these duties fairly.  Do not let any bias,

8    sympathy, or prejudice that you may feel toward one side or

9    the other influence your decision in any way.

10         As you know, the Defendant has pled not guilty to the

11   crime charged in the indictment.  The indictment is not any

12   evidence at all of guilt.  It is just the formal way that the

13   Government tells the Defendant what crime he is accused of

14   committing.  It does not even raise any suspicion of guilt.

15         Instead, the Defendant starts the trial with a clean

16   slate, with no evidence at all against him, and the law

17   presumes that he is innocent.  This presumption of innocence

18   stays with him unless the Government presents evidence here in

19   court that overcomes the presumption and convinces you beyond

20   a reasonable doubt that he is guilty.

21         This means that the Defendant has no obligation to

22   present any evidence at all or to prove to you in any way that

23   he is innocent.  It is up to the Government to prove that the

24   Defendant is guilty and this burden stays on the Government

25   from start to finish.

1    You must find the Defendant not guilty unless the

2    Government convinces you beyond a reasonable doubt that he is

3    guilty.

4        The Government must prove every element of the

5    crime charged beyond a reasonable doubt.  Proof beyond a

6    reasonable doubt does not mean proof beyond all possible

7    doubt.  Possible doubts or doubts based purely on speculation

8    are not reasonable doubts.  A reasonable doubt is a doubt

9    based on reason and common sense.  It may arise from the

10   evidence, the lack of evidence, or the nature of the evidence.

11       Proof beyond a reasonable doubt means proof that is

12   so convincing that you would not hesitate to rely and act on

13   it in making the most important decisions in your own lives.

14       If you are convinced that the Government has proved

15   the Defendant guilty beyond a reasonable doubt, say so by

16   returning a guilty verdict.  If you are not so convinced, say

17   so by returning a not guilty verdict.

18       You must make your decision based only on the

19   evidence that you saw and heard here in court.  Do not let

20   rumors, suspicions, or anything else that you may have seen or

21   heard outside of court influence your decision in any way.

22       The evidence in this case includes only what the

23   witnesses said while they were testifying under oath and the

24   exhibits that I allowed into evidence.

25       Nothing else is evidence.

1          The lawyers' and Mr. Morgan's statements and

2     arguments are not evidence.  Their questions and objections

3     are not evidence.  My legal rulings are not evidence.  And my

4     comments and questions are not evidence.

5          During the trial I did not let you hear the answers

6     to some of the questions that the lawyers and Mr. Morgan

7     asked.  You must completely ignore all of these things.  Do

8     not even think about them.

9          Do not speculate about what a witness might have said

10    or what an exhibit might have shown.  These things are not

11    evidence and you are bound by your oath not to let them

12    influence your decision in any way.  Make your decision based

13    only on the evidence as I have defined it here and nothing

14    else.

15         Whenever evidence was received for a limited purpose,

16    you must not consider it for any other purpose.  In this case,

17    you heard evidence that Mr. Morgan previously was convicted

18    of crimes.  You may not consider that evidence to determine

19    the Defendant's character or criminal propensity.  You may

20    consider the evidence only on the question of whether

21    Mr. Morgan was convicted of a crime punishable by imprisonment

22    for a term exceeding one year and that he knew that he had

23    been so convicted when he allegedly possessed a firearm.

24         You should use your common sense in weighing the

25    evidence.  Consider it in light of your everyday experience

1    with people and events and give it whatever weight you believe

2    it deserves.  If your experience tells you that certain

3    evidence reasonably leads to a conclusion, you are free to

4    reach that conclusion.

5            Now, some of you may have heard the term, direct

6    evidence and circumstantial evidence.  Direct evidence is

7    simply evidence like the testimony of an eyewitness which,

8    if you believe it, directly proves a fact.  If a witness

9    testified that he saw it raining outside, for example, and

10   you believed him, that would be direct evidence that it was

11   raining.

12           Circumstantial evidence is simply a chain of

13   circumstances that indirectly proves a fact.  If someone

14   walked into the courtroom wearing a raincoat covered with

15   drops of water and carrying a wet umbrella, that would be

16   circumstantial evidence from which you could conclude or infer

17   that it was raining.

18           It is your job to decide how much weight to give

19   the direct and circumstantial evidence.  The law makes no

20   distinction between the weight that you should give to either

21   one or says that one is any better evidence than the other.

22   You should consider all the evidence, both direct and

23   circumstantial, and give it whatever weight you believe it

24   deserves.

25           Another part of your job as jurors is to decide how

Jury Trial - Volume 2 - November 6, 2019

1    credible or believable each witness was.  That is your job,
2    not mine.  It is up to you to decide if a witness's testimony
3    was believable and how much weight you think it deserves.  You
4    are free to believe everything that a witness said or only
5    part of it or none of it at all, but you should act reasonably
6    and carefully in making these decisions.
7         Let me suggest some things for you to consider in
8    evaluating each witness's testimony:
9         Ask yourself if the witness was able to clearly see
10   or hear events.  Sometimes even an honest witness may not have
11   been able to see or hear what was happening and may make a
12   mistake.
13        Ask yourself how good the witness's memory seemed to
14   be.  Did the witness seem able to accurately remember what
15   happened?  Ask yourself if there was anything else that may
16   have interfered with the witness's ability to perceive or
17   remember the events.
18        And ask yourself how the witness acted while
19   testifying.  Did the witness appear honest or did the witness
20   appear to be lying?
21        Ask yourself if the witness had any relationship to
22   the Government or the Defendant or anything to gain or lose
23   from the case that might influence the witness's testimony.
24        Ask yourself if the witness had any bias or prejudice
25   or reason for testifying that might cause the witness to lie

1    or slant the testimony in favor of one side or the other.

2            Ask yourself if the witness testified inconsistently

3    while on the witness stand or if the witness said or did

4    something or failed to say or do something at another time

5    that is inconsistent with what the witness said while

6    testifying.

7            If you believe that the witness was inconsistent,

8    ask yourself if this makes the witness's testimony less

9    believable.  Sometimes it may, other times it may not.

10           Consider whether the inconsistency was about

11   something important or about some unimportant detail.  Ask

12   yourself if it seemed like an innocent mistake or if it seemed

13   deliberate.

14           And ask yourself how believable the witness's

15   testimony was in light of all the other evidence.  Was the

16   witness's testimony supported or contradicted by other

17   evidence that you found believable?  If you believe that a

18   witness's testimony was contradicted by other evidence,

19   remember that people sometimes forget things and that even two

20   honest people who witness the same event may not describe it

21   in exactly the same way.

22           These are only some of the things that you may

23   consider in deciding how believable each witness was.  You may

24   also consider other things that you think shed some light on

25   the witness's believability.  Use your common sense and your

1    everyday experience in dealing with other people.  And then

2    decide what testimony you believe and how much weight you

3    think it deserves.

4           One more point about witnesses.  Sometimes jurors

5    wonder if the number of witnesses who testified makes any

6    difference.  Do not make any decision based only on the number

7    of witnesses who testified.  What is more important is how

8    believable the witnesses were and how much weight you think

9    their testimony deserves; concentrate on that, and not the

10   numbers.

11          There is one more general subject that I want to talk

12   to you about before I begin explaining the elements of the

13   crimes charged.

14          The lawyers and Mr. Morgan objected to some of the

15   things that were said or done during the trial.  Do not hold

16   that against either side.  The lawyers and parties have a duty

17   to object whenever they think that something is not permitted

18   by the Rules of Evidence.  Those rules are designed to make

19   sure that both sides receive a fair trial.

20          And do not interpret my feelings on their objections

21   as any indication of how I think the case should be decided.

22   My rulings were based on the Rules of Evidence and not on how

23   I feel about the case.  Remember that your decision must be

24   based only on the evidence that you saw and heard here in

25   court.

1          That concludes the part of my instructions explaining

2     your duties and the general rules that apply in every criminal

3     case.  In a moment I will explain the elements of the crimes

4     that the Defendant is accused of committing.  But before I do

5     that, I want to emphasize that the Defendant is only on trial

6     for the particular crimes charged in the indictment.  Your job

7     is limited to deciding whether the Government has proved the

8     crime charged.

9          The criminal statute that the Defendant is accused of

10    violating is Section 922(g)(1), Title 18, United States Code,

11    which states:  It shall be unlawful for any person who has

12    been convicted in any court of a crime punishable by

13    imprisonment for a term exceeding one year to ship, possess --

14    I'm sorry, "ship" should not be there -- to possess in or

15    affecting commerce any firearm or ammunition.

16         The indictment accuses the Defendant Gemar Morgan of

17    knowingly possessing a firearm; namely, one Raven Arms Model

18    MP25, .25 caliber handgun on April 9, 2019, after he had been

19    convicted in a court of a crime punishable by imprisonment for

20    a term exceeding one year.

21         For you to find the Defendant guilty of this charge

22    the Government must prove the following elements beyond a

23    reasonable doubt:

24         First, that the Defendant was convicted in a court of

25    a crime punishable by imprisonment for a term exceeding one

1    year; second, that the Defendant knew that he had been so

2    convicted; third, that thereafter the Defendant knowingly

3    possessed the firearm on or about the date charged in the

4    indictment; and fourth, that his possession of the firearm was

5    in or affecting commerce.

6         Evidence that the Defendant Gemar Morgan has a prior

7    felony conviction is -- I'm sorry -- has prior felony

8    convictions is admitted only for the purpose of establishing

9    that elements -- the elements of the charged offense which

10   require proof of conviction of a crime punishable by

11   imprisonment for a term exceeding one year and the Defendant's

12   knowledge of such a conviction.  It is not to be considered

13   by you for any other purpose or to cast a bad light on the

14   character of Gemar Morgan.

15        If you are convinced beyond a reasonable doubt that

16   the Government has proved each of these elements beyond a

17   reasonable doubt, say so by returning a guilty verdict on this

18   count of the indictment.  If you have a reasonable doubt about

19   any one of these elements, then you must find the Defendant

20   not guilty of this charge.

21        The term "knowingly" means voluntarily and

22   intentionally and not because of mistake or accident.  This

23   means that the Defendant must have possessed the firearm

24   purposefully and voluntarily and not by accident or mistake.

25   It also means that the Defendant knew that he had been

1    convicted of a felony and that the object was a firearm.

2          The term "firearm" means any weapon which will or is

3    designed to or may readily be converted to expel a projectile

4    by action of an explosive.

5          The firearm was in or affecting commerce if it

6    crossed a state line before the alleged possession.  It is

7    sufficient for this element to show that the firearm was

8    manufactured in a state other than Michigan.

9          Next I want to explain something about possession.

10   The Government does not necessarily have to prove that the

11   Defendant owned or physically possessed the firearm for you to

12   find him guilty of the crime that alleged possession.  The law

13   recognizes two kinds of possession, actual possession and

14   constructive possession.  Either one of these, if proved by

15   the Government, is enough to convict.

16         To establish actual possession the Government must

17   prove that the Defendant had direct physical control over an

18   item and knew that he had control over it.  To establish

19   constructive possession the Government must prove that the

20   Defendant had the right to exercise physical control over an

21   item and knew that he had this right and that he intended to

22   exercise physical control over the item at some time, either

23   directly or through other persons.

24         For example, if you left something with a friend and

25   coming -- intending to come back later and pick it up or

1    intending to send someone else to pick it up for you, you

2    would have constructive possession of it while it was in the

3    actual possession of your friend.  But understand that just

4    being present where something is located does not equal

5    possession.  The Government must prove that the Defendant had

6    actual or constructive possession of the gun and that he knew

7    that he did for you to find him guilty of any of the crimes

8    which has possession of an element -- as an element.  This, of

9    course, is all for you to decide.

10          Next I want to explain something about proving a

11   defendant's state of mind.  Ordinarily there is no way that a

12   defendant's state of mind can be proved directly because no

13   one can read another person's mind and tell what the person is

14   thinking.  But a defendant's state of mind can be proved

15   indirectly from surrounding circumstances.  This includes

16   things like what the Defendant said, what the Defendant did,

17   and how the Defendant acted, and any other facts and

18   circumstances in evidence that show what was in the

19   Defendant's mind.

20          You may also consider the natural and probable result

21   of any acts that the Defendant knowingly did and whether it

22   was reasonable to conclude that the Defendant intended those

23   results.  This, of course, is all for you to decide.

24          Next I want to say something about the dates

25   mentioned in the indictment.  The indictment charges that the

1    crime happened on or about some date.  The Government does not

2    have to prove that the crime happened on that exact date, but

3    the Government must prove that the crime happened reasonably

4    close to that date.

5         A person who previously was convicted of a felony may

6    seek restoration of his right to possess a firearm under

7    federal law.

8         Under Section 925(c), Title 18, United States Code:

9    "A person who is prohibited from possessing firearms or

10   ammunition may make application to the Attorney General for

11   relief from the disabilities imposed by federal laws with

12   respect to the acquisition, receipt, transfer, shipment,

13   transportation, or possession of firearms.  And the Attorney

14   General may grant such relief if it is established to his

15   satisfaction that the circumstances regarding the disability

16   and the applicant's record and reputation are such that the

17   applicant will not be likely to act in a manner dangerous to

18   public safety and that granting the relief would not be

19   contrary to the public interest.

20        "Any person whose application for relief from the

21   United States" -- I'm sorry -- "any person whose application

22   for relief from disabilities is denied by the Attorney General

23   may file a petition with the United States District Court for

24   the District in which he resides for a judicial review of such

25   denial.  Whenever the Attorney General grants relief to any

1    person pursuant to this section, he shall promptly publish it

2    in the Federal Register Notice of Actions, together with the

3    reasons therefor."

4            Another law, Section 478.144, Title 27 of the Code of

5    Federal Regulations, under that law a prohibited person may

6    apply to the Director of the Bureau of Alcohol, Tobacco,

7    Firearms, and Explosives for relief from such prohibition.

8    The law reads:  "Whenever the director grants relief to any

9    person pursuant to this section, a notice of such action shall

10   be promptly published in the Federal Register, together with

11   the reasons therefor."

12           Under Section 750.224F(2), Michigan Compiled Laws, a

13   person convicted of a specified felony may have his or her

14   rights to possess a firearm restored after five years if the

15   person has paid all fines imposed for the violation, the

16   person has served all terms of imprisonment imposed for

17   the violation, the person has successfully completed all

18   conditions of probation or parole imposed for the violation,

19   and the person properly submitted a petition for restoration

20   of rights to a Michigan Circuit Court which granted the

21   petition.

22           The Defendant has the burden of proving this defense

23   and he must prove it by a preponderance of the evidence, which

24   means that it is more likely than not that he has carried his

25   burden of proof.

1        If you find that the Defendant Gemar Morgan applied

2    for and was granted a restoration of his right to possess a

3    firearm under either of these laws -- it says either of these

4    two laws, but there are three -- two apply to the federal

5    conviction, one applies to the state conviction -- then you

6    must find him not guilty.

7        Keep in mind that even though the Defendant has

8    raised this defense, the Government still has the burden of

9    proving all the elements of the crime charged beyond a

10   reasonable doubt.

11       That concludes my part of the instructions explaining

12   the elements of the crime.  Next I will explain the

13   Defendant's position.

14       Defendant Gemar Morgan contends that he is not guilty

15   of the crime with which he is charged.  He maintains that his

16   right to possess a firearm was restored by law.

17       That concludes the part my instructions explaining

18   the elements of the crime and the Defendant's position.  Next

19   I will explain some rules that you must use in considering

20   some of the testimony and evidence.

21       A defendant has an absolute right not to testify or

22   present evidence.  The fact that the Defendant in this case did

23   not testify or present any evidence cannot be considered by

24   you in any way.  Do not even discuss it in your deliberations.

25       Remember that it is up to the Government to prove the

 1    Defendant guilty beyond a reasonable doubt.  It is not up to

 2    the Defendant to prove his innocence.

 3         The Defendant Gemar Morgan has chosen to represent

 4    himself during this trial.  Mr. Morgan is not a lawyer.

 5    And although he understands that he has a right to have an

 6    attorney represent him throughout the proceedings, he also has

 7    a right to represent himself.

 8         The fact that Mr. Morgan has decided to represent

 9    himself in these proceedings should not enter into your

10    deliberations in any way, either for or against Mr. Morgan,

11    and this case should be judged like any other case.

12         You heard testimony from witnesses who are police

13    officers or agents.  That testimony is to be judged by the

14    same standards you used to evaluate the testimony of any other

15    witnesses.

16         You have heard the testimony of David Salazar and

17    Kenton Weston who testified to certain facts and also gave

18    testimony in the form of an opinion.  With respect to the

19    opinion testimony, such witnesses may have special knowledge

20    or experience that allows the witness to give an opinion based

21    on facts furnished to that witness by others.

22         You should assess the fact testimony of the witnesses

23    using the factors I explained earlier and decide if the

24    witness's testimony was believable and how much weight you

25    think it deserves.

1          You may, but do not have to, accept the witness's

2     opinions.  In deciding how much weight to give it or to give

3     them you should consider each witness's qualifications and how

4     he reached his conclusions.  Also consider the other factors

5     discussed in these instructions for weighing the credibility

6     of witnesses.

7          Remember that you alone are to decide how much of a

8     witness's testimony to believe and how much weight you think

9     it deserves.

10          The law does not require any party to call as

11     witnesses all persons who may have been present at any time or

12     place involved in the case or who may appear to have some

13     knowledge of the matters in issue at this trial.  Nor does the

14     law require any party to produce as exhibits all papers and

15     things mentioned in the evidence in the case.

16          That concludes the part of my instructions explaining

17     the rules for considering some of the testimony in evidence.

18     Now we will hear the closing arguments of the attorneys and

19     Mr. Morgan.  Pay attention, please, to these arguments, but

20     remember that the closing arguments are not evidence.  They

21     are only intended to assist you in understanding the evidence

22     and the theory of each party.  You must base your decision

23     only on the evidence.

24          Is the Government prepared to address the jury?

25          MR. VAN WERT:  Yes, your Honor.

```
 1                THE COURT:  Mr. Van Wert, you may proceed.
 2                MR. VAN WERT:  Thank you.  May I approach the
 3      lectern, your Honor?
 4                THE COURT:  Yes, of course.
 5                MR. VAN WERT:  Shall we turn the screens on for the
 6      jurors, your Honor?
 7                THE COURT:  Let me see.  Are those videos up on your
 8      screens?
 9                Do you want to pull the screens up?
10                MR. VAN WERT:  May I proceed?
11                THE COURT:  Yes.
12                MR. VAN WERT:  Thank you.
13                Ladies and gentlemen, this is a simple case.  It's a
14      case involving one defendant, one crime, that was committed on
15      one day, April 9, 2019, in the City of Warren.
16                That Defendant is Gemar Morgan.  You heard that on
17      that day various officers were looking for him, trying to
18      arrest him on a felony warrant.
19                They eventually found him outside of a physical
20      therapy or a pharmacy business in the City of Warren.  They
21      executed that arrest warrant, placed him in handcuffs, and
22      patted his pockets.  While doing so they found a firearm in
23      his pocket.
24                Ladies and gentlemen, Judge Lawson gave you a number
25      of instructions now and I want to talk about a couple of those
```

1   briefly.

2          First of all, your duties as jurors.  Your duties are

3   to listen to the evidence, listen to the witnesses, what they

4   said, look at the evidence, look at the exhibits, and based

5   upon the evidence, determine what happened.  And Judge Lawson

6   instructed you on the evidence, what it is and what it isn't.

7          The evidence includes what the witnesses said while

8   under oath.  The evidence includes the exhibits that were

9   actually admitted.

10         Judge Lawson told you nothing else is evidence.  The

11  lawyers' statements, meaning my statements, the statements by

12  Ms. Ison, also the statements made by the Defendant while

13  questioning witnesses are not evidence.  Statements made in

14  opening statements by myself -- or I'm sorry -- by Ms. Ison or

15  by the Defendant are not evidence.  The only thing that's

16  evidence is what you heard from the witnesses who testified

17  under oath and the exhibits that were admitted.

18         Once you listen to that evidence, once you have

19  determined what happened that day, April 9, 2019, you then

20  apply what happened and apply the law that Judge Lawson gave

21  to you and will give to you.  You apply it to those facts and

22  decide whether the Government proved its case beyond a

23  reasonable doubt.

24         Again, it's important that -- it's the job of Judge

25  Lawson and only Judge Lawson to tell you what the law is, what

1    law to apply to the facts of this case.  If what I said

2    disagrees with what Judge Lawson tells you, if what Ms. Ison

3    said disagrees with what Judge Lawson tells you, or if what

4    Mr. Morgan said disagrees with the law as given to you by

5    Judge Lawson, you must follow what Judge Lawson told you.

6    What the Judge says about the law controls and that's very,

7    very important.

8          Again, simple case.  One defendant, one crime, one

9    day.  The crime is being a felon in possession of a firearm.

10          That crime is made up of four elements.  That's what

11   the Government needs to prove beyond a reasonable doubt;

12   nothing more than those four elements, nothing less than those

13   four elements.

14          First, that the Defendant, Mr. Morgan, was convicted

15   in a court of a crime punishable by imprisonment for a term

16   exceeding one year; second, that he knew he had been so

17   convicted; third, that the Defendant knowingly possessed a

18   firearm on or about the date charged in the indictment, which

19   was April 9th; that the possession of the firearm was in or

20   affecting commerce.  I'll talk about these one by one.

21          First, the first element that the Defendant was

22   convicted in a court of law of a crime punishable by more than

23   one year in prison.  How did the Government meet the -- meet

24   its burden by proving that element beyond a reasonable doubt?

25   The court documents showing Mr. Morgan's convictions of two

1    separate offenses that were punishable by more than one year

2    in prison.

3           Now, this element is important because it punishes

4    crimes where the possible penalty is more than one year.  In

5    this case, Mr. Morgan didn't receive a possible penalty of

6    morn than one year, but actually received more than one year

7    imprisonment on each of those crimes.

8           First, on Exhibit Number 5, which is the judgment of

9    sentence from the 1998 case which was imposed in 1999, showing

10   that Mr. Morgan was imprisoned for a term of four to fifteen

11   years on Count 1.

12          Second way we proved this crime is with the judgment

13   of sentence from the more recent conviction from the Western

14   District of Michigan, federal offense of being a felon in

15   possession of a firearm.  Again, Mr. Morgan was sentenced in

16   this case to more than one year, 78 months.

17          Second element the Government needs to prove beyond

18   a reasonable doubt, that the Defendant knew that he was

19   convicted of a crime punishable by more than one year in

20   prison.  Again, the same evidence that proves element one

21   proves element two.

22          The fact that Mr. Morgan -- how did he know he was

23   punishable by more than -- of a crime punishable by more than

24   one year?  Because he was actually sentenced to more than

25   one year, each of those crimes.

1          Again, the armed robbery conviction, four to fifteen

2     years on Count 1, two years on Count 2, and the felon in

3     possession conviction, 78 months.  More than one year on each

4     of those crimes.

5          Third element is the Defendant knowingly possessed

6     the firearm on or about the date charged in the indictment.

7     The date charged in the indictment was April 9, 2019.

8          Ladies and gentlemen, Trooper Brian Kross testified

9     that when he located the Defendant he was placed under arrest.

10    Patted him down.  This firearm was in the Defendant's pocket.

11    Raven Arms .25 caliber semiautomatic firearm in his right

12    front pants pocket.

13         Witnesses have testified that they told you that they

14    were looking for the Defendant and looking to arrest him on a

15    warrant out of Allen Park.  They tracked him down.  They did

16    their job.  Their job was to find him, arrest him on that

17    warrant, take him into custody.  They did that.  During that

18    process, again, they patted him down, found the gun in his

19    pocket.

20         Special Agent David Salazar inspected that gun,

21    looked at it, told you it was a firearm.  He told you he

22    looked at the -- he inspected the firearm.  He looked at it.

23    It was marked with the markings identifying it as a firearm.

24         The fourth element is that the firearm was in or

25    affecting commerce.  Again, Judge Lawson instructed you on

1    this element and told you what that term means.  The firearm

2    was in or affecting commerce if it crossed a state line before

3    it was possessed.  It's sufficient to show the firearm was

4    manufactured in a state other than Michigan, and again, that

5    was established through the testimony of Special Agent David

6    Salazar who told you that the Raven Arms firearm was

7    manufactured in the state of California.

8              How did he determine that?  Business records of

9    Raven Arms, a California company, manufactured guns only in

10   California.  Also, look at the firearm holding it in your

11   right hand indicates on there it was made in California.

12             Ladies and gentlemen, I told you what the Government

13   is required to prove for this crime.  Those four elements;

14   nothing more, nothing less.

15             What is not an element that the Government is

16   required to prove for this crime, the Government does not have

17   the burden of showing that the Defendant's rights have not

18   been restored.  It's on the Defendant.  If he wants to raise

19   that defense, it is his burden to show it.  Again, the

20   Defendant -- the Government produced proof that he was

21   convicted of two separate crimes punishable by more than one

22   year in prison.

23             First was a state charge.  Judge Lawson instructed

24   you under state law if you're convicted of a crime like that

25   punishable by more than one year imprisonment, how do you get

Jury Trial - Volume 2 - November 6, 2019

63

1   your rights back?  How do you again, at some point in time,

2   get your right to possess a firearm back?

3          Well, Judge Lawson told you.  Five years must pass

4   until the sentence is done.  Petition the Court and get an

5   order from the Court.  That's the only way.

6          For the federal crime, again, Judge Lawson instructed

7   you when you're convicted of a federal crime punishable by

8   more than one year in prison, how do you again get the right

9   to possess a firearm?  Well, first way is you apply for relief

10  from the Attorney General who has to grant that relief, publish

11  it in the Federal Register, which is a public directory.

12         Second way is to get relief from the actual Director

13  of the ATF who, again, if he grants that relief, will publish

14  in the Federal Register.

15         Again, that's not one of the elements the Government

16  must prove.  The Defendant wants to make those allegations to

17  raise that defense, it's his burden to show.  There has been

18  no -- absolutely no proof that the Defendant's rights were

19  restored in any way, state law, federal law, under no law.

20         Ladies and gentlemen, again, simple case.  One

21  defendant, one crime, one day.  Government needs to show

22  that the Defendant, prohibited from possessing a firearm

23  based upon his prior convictions, and that was done beyond a

24  reasonable doubt.

25         Also, that the Defendant knew that he was

```
 1    punishable -- that he was convicted of those crimes punishable
 2    by more than one year in prison.  Government did that beyond a
 3    reasonable doubt.
 4         The Government needed to show that the Defendant
 5    possessed that firearm, and the Government did that beyond a
 6    reasonable doubt by showing that when he was arrested he had
 7    that gun, Exhibit 1, in his pocket.
 8         That the gun traveled in interstate commerce.  It was
 9    not made in Michigan.  It was made in California.  That meets
10    that element.
11         Ladies and gentlemen, this is a simple case.  One
12    defendant, one crime.  He is simply guilty.
13         Thank you.
14         THE COURT:  Thank you, Mr. Van Wert.
15         Mr. Morgan, would you like to address the jury?
16         DEFENDANT MORGAN:  Yes.
17         THE COURT:  All right.
18         DEFENDANT MORGAN:  The Defense comes before the court
19    to assert the founding commands of the Fourteenth Amendment --
20         THE COURT:  Stand by one second.
21         Can you hear Mr. Morgan okay?
22         Mr. Morgan, you can step up to this lectern here, if
23    you would like.
24         DEFENDANT MORGAN:  How's that?
25         THE COURT:  Would you like to -- would you like to
```

1    use the lectern or do you want to do it from there?

2          DEFENDANT MORGAN:  I can do it right here.  Could you

3    hear me from here?

4          THE COURT:  That's better.

5          DEFENDANT MORGAN:  Okay.  The Defense comes before

6    the Court to assert the founding commands of the Fourteenth

7    Amendment of the United States Constitution.  No state shall

8    make any law that will abridge the privileges or immunities of

9    citizens of the U.S., nor shall any state deprive any person

10   of life, liberty, or property without due process of law, nor

11   deny any person the equal protection of the laws.

12         Amendment one, religion and expression.  Congress

13   shall not -- Congress shall make no law respecting an

14   establishment of religion or prohibiting the free exercise

15   thereof or abridging the freedom of speech or of the press or

16   the right of the people peaceably to assemble and to petition

17   to the Government for redress of grievances.

18         As the right of freedom of speech, the definition of

19   felon is one who has been convicted of a felony and has not

20   yet finished serving time for the conviction.

21         MR. VAN WERT:  Objection, your Honor.  That is a

22   misstatement of the law.

23         DEFENDANT MORGAN:  Mr. Morgan --

24         THE COURT:  Just a minute, Mr. Morgan.  If he

25   objects, just stop talking for a minute.

1          MR. VAN WERT:  I apologize, your Honor, for objecting

2    to defense closing, but that's a misstatement of the law.

3    That's been provided by the Court and decided by the Court,

4    your Honor.

5          THE COURT:  All right.  Mr. Morgan, you should not be

6    telling the jury what you believe the law is.  The law comes

7    from me.

8          DEFENDANT MORGAN:  I'm not telling -- I'm giving

9    them a definition up under the freedom of speech.  I got

10   the freedom of speech to give them a definition that the

11   dictionary defines as felon.  That's not the law.  That's a

12   definition.

13         THE COURT:  Actually, it is the law.  The objection

14   is --

15         DEFENDANT MORGAN:  The word "felon" is not a law,

16   that's a definition.

17         THE COURT:  Mr. Morgan, I disagree.  The objection is

18   sustained, and you may not make that argument.

19         Members of the jury, as I indicated before, if the

20   parties or the lawyers tell you what they believe the law is,

21   you must disregard it and take the law from me as I have

22   instructed you.

23         Go ahead then.

24         DEFENDANT MORGAN:  Mr. Morgan will assert all rights

25   and -- Mr. Morgan will assert all rights promised by the

1  Constitution in order to protect self from the constraints of

2  abuse, harm, bias, and prejudice.

3           The most important matter in this process is that

4  Mr. Morgan was rewarded the endorsement on -- Mr. Morgan

5  was rewarded the endorsement on his CDL to haul hazardous

6  material --

7           MR. VAN WERT:  Objection, your Honor.  This assumes

8  facts not in evidence.  There was absolutely no evidence

9  produced during trial in this matter.

10          THE COURT:  Mr. Morgan, you can only discuss what was

11  in evidence.  There is no evidence of that here.

12          DEFENDANT MORGAN:  The law enforcement agents got my

13  CDL, so this is the truth.  I got the freedom of speech to

14  speak the truth.

15          THE COURT:  You have the freedom of speech in a

16  closing argument to discuss the evidence.  You haven't offered

17  any of that evidence.

18          DEFENDANT MORGAN:  Okay.

19          THE COURT:  The objection is sustained.

20          DEFENDANT MORGAN:  Which range from marine pollutants

21  to explosives.

22          MR. VAN WERT:  Objection, your Honor.  Judge, he is

23  continuing on with the exact same argument despite the

24  objection being sustained just now.

25          THE COURT:  You understood my ruling, Mr. Morgan?

```
 1              DEFENDANT MORGAN:  Yeah.  I'm moving on.
 2              THE COURT:  Okay.  Go ahead.
 3              DEFENDANT MORGAN:  Yeah.
 4         Which are classified as conditions to have rights
 5    restored under the requirements elected by TSA and Department
 6    of Homeland Security.
 7              Mr. Morgan would request to the Court for permission
 8    to subpoena the Allen Park Police Department surveillance
 9    video footage for April 9, 2019, which would prove that Brian
10    Kross pocketed my enhanced and hazmat endorsed CDLs and exited
11    the Allen Park Police Department.
12              Also, Mr. Morgan will request to the Court for the
13    subpoena of phone records of either Mr. Morgan or Brian Kross
14    where the phone records will show that on March 8th, 2019, the
15    conversation that Mr. Morgan and Brian Kross had, whereas it
16    will show the perjury that Brian Kross committed on 11/5/2019
17    under oath, authorized in the Federal Rules of Evidence
18    Rule 603.
19              Definition:  Oath or affirmation to testify
20    truthfully.  Before testifying a witness must give an oath or
21    affirmation to testify truthfully.
22              The Defense asserts the 14th Amendment in this
23    matter, a request, asserting equal protection of the law,
24    whereas Federal Rules of Evidence Rule 401 tests relevance of
25    evidence.  A:  It has any tendency to make a fact more
```

probable than it would be without the evidence.

Defense assert Federal Rules of Evidence Rule 401 in this matter so that the jury may examine evidence that will clarify and show proof that a Government witness blatantly lied under oath after I asked Brian Kross, have you lied under oath to cover up the truth, which he said no, which in this matter is a violation of United States Code Subsection 1621, perjury.

The Defense stress the value of the Fourteenth Amendment, equal protection of the law, due to the prejudice, abuse, and harm that a lie under oath will inflict, whereas -- a lie under oath will inflict, whereas Rule 401 must be inserted in this matter due to the requested video footage and phone conversation will prove a fact more probable as Rule 401 promise and can prevent harm, abuse, error, and prejudice that a witness lying under oath has committed.

The Defense would like to emphasize the importance of the witness testimony on 11/5/19. The Defense asked each witness if they were employed by a professional entity of the Government. Each witness has said yes. The purpose of the question was to examine the test of the ethics and conduct that a professional entity applies in a serious matter that involved the lives of peoples.

One of the main questions that was asked to each witness was, did any of the witness conduct a forensic lab

1     report for the firearm which will determine the fingerprints,

2     identification, and DNA results from the firearm.

3            Also, the Defense asked the witness -- witnesses, did

4     they have a legal arrest and seize warrant.  If so, could each

5     witness provide an address, license plate, property, and names

6     of the people that was involved in the legal arrest warrant.

7     Majority of the witnesses stated they could not produce the

8     details.

9            Also, the Defense asked each witness did they allege

10    that Mr. Morgan traveled across state line with a firearm.

11    Each witness answered no.  The Supreme Court define traveling

12    across -- the Supreme Court define possession and --

13    possession of a firearm in commerce as a person possesses in

14    commerce or affecting commerce if at the time of the offense

15    the gun was moving in interstate or on an interstate facility.

16           MR. VAN WERT:  Objection, your Honor.  That's again a

17    misstatement of the law.

18           THE COURT:  Mr. Morgan, that's simply not correct.

19           DEFENDANT MORGAN:  That's what the -- I got it right

20    here.

21           THE COURT:  Well, that's not --

22           DEFENDANT MORGAN:  That's what the Supreme Court

23    ruled.

24           THE COURT:  That does not apply to the crime charged

25    in this indictment.  We have been over this about four times

1    in this case now and --

2              DEFENDANT MORGAN:  This the definition.

3              THE COURT:  Don't interrupt me while I'm talking to

4    you.

5              DEFENDANT MORGAN:  Okay.

6              THE COURT:  The law with respect to possession and

7    with respect to in or affecting commerce is decided in the

8    jury instructions and those in the instructions I gave the

9    jury and you're telling them something different and that

10   doesn't apply here.  So the objection is sustained and you

11   will have to move on to something else.

12             DEFENDANT MORGAN:  Okay.

13             The Supreme Court rejected the Government's

14   submission.  This is the definition of interstate commerce.

15             The Supreme Court rejected the Government's

16   submission concerning purported ties to interstate commerce

17   emphasizing that the term, used in the activity affecting

18   commerce, is most sensibly read to mean active employment for

19   commercial purposes and not a merely passive passing or past

20   connection to ties.

21             It surely is not the common perception that a private

22   owner occupying a residence is used in the activity of

23   receiving natural gas, a mortgage, or insurance policy.

24             And I will read this definition.

25             THE COURT:  Mr. Morgan, you can't read definitions.

Jury Trial - Volume 2 - November 6, 2019

1    If you want to talk about the law, you can talk about the law

2    as stated in the jury instructions, but not what you perceive

3    to be the law if it's different.

4            DEFENDANT MORGAN:  I'm reading exactly what it states.

5            THE COURT:  Well, what you have stated there does not

6    apply to this case.  I have already ruled on that.  So if you

7    have --

8            DEFENDANT MORGAN:  Could I ask a question?

9            THE COURT:  If you want to discuss the facts of

10   the case in relation to the law that's stated in the jury

11   instructions, you have a right to do that.

12           DEFENDANT MORGAN:  Could I ask a question?

13           THE COURT:  Yes.

14           DEFENDANT MORGAN:  Do this case involve interstate

15   commerce?  Possession of a firearm in interstate commerce or

16   affecting commerce?

17           THE COURT:  You read the jury instructions; correct?

18           DEFENDANT MORGAN:  I'm asking you a question so we

19   can have a mutual understanding.

20           THE COURT:  Well, this is not --

21           DEFENDANT MORGAN:  Because I have rights also.

22           THE COURT:  This is not a debate.

23           DEFENDANT MORGAN:  I'm asking a question, your Honor.

24           THE COURT:  The answer to your question --

25           DEFENDANT MORGAN:  According to the jury instructions

1    I got, the fourth element of that jury instruction states that

2    a person must possess, possess the firearm in interstate -- in

3    commerce or affecting commerce.

4         THE COURT:  That's right.  If you look on page 17

5    of the jury instructions it says that a firearm was in or

6    affecting commerce if it crossed a state line prior to the

7    alleged possession.

8         DEFENDANT MORGAN:  Up under the --

9         THE COURT:  It's sufficient for this element to show

10   that the firearm was manufactured in a state other than

11   Michigan.

12        DEFENDANT MORGAN:  That's not the law, your Honor.

13        THE COURT:  Mr. Morgan, it's the law that applies to

14   this case, and that's what you must be governed by.

15        DEFENDANT MORGAN:  Okay.  Could I read -- could I

16   read the dormant clause of the commerce?

17        THE COURT:  No.

18        DEFENDANT MORGAN:  Why is that, your Honor?

19        THE COURT:  Because it's not the law that applies

20   to this case.

21        DEFENDANT MORGAN:  Up under the Fourteenth

22   Arulement [sic] you're depriving me of the equal protection

23   of the law.  This give a -- this is a clear definition of the

24   commerce clause right here.  It will help the jury understand

25   exactly what the term, commerce, means.

```
1              THE COURT:  Mr. Morgan, do you have any further
2    argument or do you want me to order you to sit down?
3              DEFENDANT MORGAN:  Yes.  Yes, I do have an argument.
4              THE COURT:  All right.  As long as it doesn't
5    apply -- as long as it doesn't refer to your conception of
6    what you think the law ought to be, you can go forward.
7    Otherwise, move on to something else.
8              DEFENDANT MORGAN:  Okay.  The use of a gun
9    manufactured in another state.  Do that have anything to do
10   with this case?
11             THE COURT:  This doesn't have to do with use, it has
12   to do with possession.
13             DEFENDANT MORGAN:  I'm about to read the use of a gun
14   manufactured in another state.  You said look on page 17.
15             Excuse me.  The last sentence on page 17 say it is
16   sufficient for this element to show that the firearm was
17   manufactured in another state other than Michigan.  Now, I
18   got a perfect law that states a gun manufactured outside of
19   Michigan.  Could I read that?
20             THE COURT:  You want to read a law?
21             DEFENDANT MORGAN:  Yes.  You said I can talk about
22   the law.
23             THE COURT:  You can talk about the law as stated in
24   the jury instructions.
25             DEFENDANT MORGAN:  Okay.  That's -- that's what
```

1    it is.

2           Neither does the use of a gun manufactured in another

3    state constitute engaging in interstate commerce because there

4    are no gun manufacturers in Michigan.

5           MR. VAN WERT:  Your Honor, I would have to object.

6           DEFENDANT MORGAN:  Virtually every gun comes from

7    another state.

8           THE COURT:  There is an objection.

9           DEFENDANT MORGAN:  Excuse me?

10          THE COURT:  There is an objection.

11          MS. RABEN:  There is an objection, so you have to

12   stop.

13          MR. VAN WERT:  And I apologize for objecting again,

14   but again, I renew my previous objections that the Defendant

15   is misstating the law.  The Court has already ruled and I have

16   to object, your Honor.

17          THE COURT:  You have read that passage to me before,

18   Mr. Morgan.  You have read it, I think, two or three times

19   now.  This would probably be the fourth.  I told you that law

20   does not apply here and so you may not tell the jury that it

21   does.

22          DEFENDANT MORGAN:  Up under the Fourteenth Amendment

23   it say the use of a gun manufactured in another state.  On

24   page 17, the last sentence, it talks about the firearm was

25   manufactured in another state.  I mean, I'm reading what

1    the law states.  I'm reading what is on page 17.  It's

2    identical.  If it's not identical, what is not proper about

3    reading the law that will define to the jury exactly the

4    clarification of the misunderstanding on page 17?  That's

5    the law.

6            THE COURT:  So you're telling me that there is a

7    misunderstanding on page 17?

8            DEFENDANT MORGAN:  No.  I'm telling you -- I'm asking

9    you what's the misunderstanding?  On page 17 it say it's

10   sufficient for the element to show that the firearm was

11   manufactured in another -- in a state other than Michigan.

12   This law right here states the use of a gun manufactured in

13   another state.  I'm asking you what's the difference between

14   the two.  This is talking about the same identical term.

15           THE COURT:  It is not.  It's talking about use as

16   opposed to possession.  Those are two different things.

17   You're not charged with using a gun.  You're charged with

18   possessing a gun.

19           DEFENDANT MORGAN:  Well, it give the definition of

20   the possession.

21           THE COURT:  Go ahead with your argument.

22           DEFENDANT MORGAN:  Okay.  Thus, any gun used in a

23   state that does not manufacture guns necessarily involves

24   the accusation -- acquisition of a product that moved in

25   interstate commerce.  If the use -- if the possession of a gun

```
1    manufactured in another state supplied the jurisdictional hook

2    for whether an action constitutes engaging in interstate

3    commerce, then every crime committed in Michigan with a gun

4    or any other weapon not manufactured here will potentially be

5    subject to federal criminal jurisdiction.  This is not the

6    law.  If it were, then whether or not federal criminal

7    jurisdiction attaches would depend upon where weapons are

8    manufactured.

9            And in constitutional -- constitutional Article I,

10   Clause -- subsection A, Clause 3, Congress gave -- Congress

11   got the power to regulate commerce, not manufacturing, as this

12   law states right here.

13           The gun possessed here were the implement by the --

14   by which members carry out alleged criminal activity.  The

15   gun may have been involved in interstate commerce, but not the

16   offense.

17           The Supreme Court made clear in Building -- American

18   Building Trade Maintenance that the purchase from a local

19   supplier of goods --

20           MR. VAN WERT:  Judge, I apologize.

21           THE COURT:  Mr. Morgan, excuse me, please.

22           Mr. Morgan, you are not to cite law to the jury.

23           DEFENDANT MORGAN:  You just told me I can talk about

24   the law.

25           THE COURT:  You can talk about the law as it is
```

1    stated in the jury instructions.  You are not to read from

2    Supreme Court cases.

3             DEFENDANT MORGAN:  You're giving me a direct order,

4    your Honor.  I mean, you told me I can talk about the law.

5    That's exactly what I'm reading from.

6             THE COURT:  No, you're not.  You're not reading from

7    the jury instructions.  You're reading from case law that may

8    or may not apply to this case.  The law that the jury is to

9    apply is the law that I gave to them.

10            Now, do you have anything further about the facts of

11   the case that you would like to discuss?

12            DEFENDANT MORGAN:  Yes, your Honor.  The facts in

13   this case, you got, what, two prosecutors, a judge that's been

14   biased, prejudiced, and harmful, and caused all kind of error

15   in this process.  Every time I try to produce any evidence,

16   you know, or laws that supports my defense, the Government

17   make an objection and you rule in they favor.  This is

18   prejudice.  This is violation of the Fourteenth Amendment.

19            It's a violation of the Tenth Amendment.  The

20   Tenth Amendment gave the powers to the states, meaning the

21   individual states and to the peoples, not to the United

22   States.

23            This case should not be in the federal criminal

24   justice jurisdiction.  This is a state case and the Federal

25   Government has violated every rights pertaining to the

```
1    Interstate Commerce Act.

2            If you define -- if you allow me to define the

3    Interstate Commerce Act, I would be happy to define it, so the

4    jury can understand what that terminology mean.  It don't have

5    nothing to do with being in the state that you reside in, the

6    Interstate Commerce Act -- matter of fact, I will read it to

7    you.

8            MR. VAN WERT:  Your Honor, I object again.

9            THE COURT:  You're going to read a law to me,

10   Mr. Morgan?

11           DEFENDANT MORGAN:  The Interstate Commerce Act,

12   because that was derived from the Title 49, the transportation

13   title.  I'm a CDL truck driver.  Interstate commerce got to

14   deal with the transportation of property and goods across

15   the United States.  It's regulated to prevent monopoly and

16   prejudice from the carriers, the carrier rates.  It don't have

17   anything to do with the criminal activity as the law specify.

18           THE COURT:  All right.  I will not permit you to read

19   the Interstate Commerce Act to the jury.

20           DEFENDANT MORGAN:  That's depriving me of my rights

21   again.  That's biased, that's prejudiced, and that's harm, a

22   harmful error.

23           THE COURT:  Do you have anything else?

24           DEFENDANT MORGAN:  And very prejudiced.

25           THE COURT:  Do you have anything else?
```

```
 1              You're sitting down.  Does that mean you have nothing

 2   else?

 3              DEFENDANT MORGAN:  I mean, you won't let me -- you

 4   won't allow me to assert my rights up under the Constitution.

 5   The Constitution give me the freedom of speech.  I refuse to

 6   disrespect your courtroom by overtalking you, so if you not

 7   going to allow me to assert the rights as you -- in one phrase

 8   you tell me to feel free to talk about the law, then when I

 9   get to talking about the law, this Government prosecutor, he

10   objects and you rule in his favor.  That's bias and that's

11   prejudice.  That's clear as day.  It's been biased and

12   prejudiced ever since April the 9th, 2019.

13              I'm not a convicted felon.  I was a truck driver for

14   the last ten years.  Like I say, the definition of felon is

15   one who has committed a crime and has not yet finished serving

16   time for that sentence.  I been discharged.  I got discharge

17   papers right here.  I'm not a felon.  I got the right to speak

18   that.

19              THE COURT:  All right.  Anything else?

20              DEFENDANT MORGAN:  No, your Honor.  Thanks a lot.

21              THE COURT:  Thank you.

22              Any further argument from the Government?

23              MR. VAN WERT:  Very briefly, your Honor.

24              THE COURT:  All right.

25              MR. VAN WERT:  Ladies and gentlemen, again, the law
```

```
 1    is what Judge Lawson gives you.  It's not what I want it to
 2    be.  It's definitely not what Mr. Morgan wants it to be.  It's
 3    what Judge Lawson tells you it is.  That's what you apply in
 4    this case to the facts of this case.
 5          The four elements to the one crime, that's what
 6    matters in this case.  The evidence establishes that every one
 7    of those elements was met beyond a reasonable doubt.
 8          If you apply the correct law, you apply the evidence,
 9    the testimony, the exhibits, what they have shown, the
10    Defendant is guilty, your Honor.
11          Ladies and gentlemen, thank you.
12          THE COURT:  Thank you, Mr. Van Wert.
13          Let me finish now, ladies and gentlemen, by
14    explaining some things about your deliberations in the jury
15    room and your possible verdicts.
16          The first thing that you should do in the jury room
17    is choose someone to be your foreperson.  That person will
18    help guide your discussions and will speak for you here in
19    court.
20          Once you start deliberating, do not talk to the jury
21    officer or to me or to anyone else except each other about the
22    case.  If you have any questions or messages you must write
23    them down on a piece of paper, sign them, and then give them
24    to the jury officer.  The officer will give them to me and I
25    will respond as soon as I can.  I may have to talk to the
```

1    lawyers and Mr. Morgan about what you have asked and so it

2    may take some time to get back to you.  Any questions or

3    messages normally should be sent to me through your foreperson

4    in writing.

5            I will send the exhibits into the jury room except

6    for the firearm.  If you want to see that exhibit that was

7    admitted in evidence, you may send me a message and that

8    exhibit will be provided for you.  You do not need to send a

9    note requesting the other exhibits.

10           One more thing about messages.  Do not ever write

11   down or tell anyone how you stand on your votes.  For example,

12   do not write down or tell anyone that you are split six-to-six

13   or eight-to-four or whatever your vote happens to be.  That

14   should stay secret unless -- until you are finished.

15           Remember that you must make your decision based only

16   on the evidence that you saw and heard here in court.  Do not

17   try to gather any information about the case on your own

18   while you are deliberating.  For example, do not conduct any

19   experiments inside or outside of the jury room.  Do not bring

20   in any books like a dictionary or anything else with you

21   that -- to help you with your deliberations.  Do not conduct

22   any independent research, reading, or investigation about the

23   case.  Do not consult or visit the internet.  And do not visit

24   any of the places that were mentioned during the trial.

25           During your deliberations you must not communicate

1    with or provide any information to anyone by any means about

2    this case.  You may not use any electronic devices or media,

3    such as a telephone, cellphone, Smartphone, iPhone,

4    Blackberry -- if anybody has a Blackberry I'd like to know

5    about it -- or a computer, the internet, or any internet

6    service or any text or instant messaging service, or any

7    internet chat room, blog, website, such as Facebook, LinkedIn,

8    YouTube, Snapchat, or Twitter, to communicate to anyone any

9    information about this case or to conduct any research about

10   the case until I accept your verdict.  Make your decision

11   based only on the evidence that you saw and heard in court.

12           Some of you have taken notes during this trial.

13   Whether or not you took notes, you should not be influenced

14   by the notes of another juror, but you should rely on your

15   own memory of what was said.  Notes are only an aid to

16   recollection and are not entitled to any greater weight than

17   the actual recollection or impression of each juror as to what

18   the evidence actually is.

19           Your verdict, whether it is guilty or not guilty,

20   must be unanimous.  To find the Defendant guilty of the charge

21   in the indictment every one of you must agree that the

22   Government has overcome the presumption of innocence with

23   evidence that proves the Defendant's guilt beyond a reasonable

24   doubt.

25           To find him not guilty every one of you must agree

1    that the Government has failed to convince you beyond a

2    reasonable doubt.  Either way, guilty or not guilty, your

3    verdict must be unanimous.

4         Now that the evidence is in and the arguments are

5    completed you are free to talk about the case in the jury

6    room.  In fact, it is your duty to talk with each other about

7    the evidence and to make every reasonable effort you can to

8    reach unanimous agreement.

9         Talk with each other.  Listen carefully and

10   respectfully to each other's views and keep an open mind as

11   you listen to what your fellow jurors have to say.  Try your

12   best to work out your differences.

13        Do not hesitate to change your mind if you are

14   convinced that the other jurors are right and your original

15   position was wrong.  But do not ever change your mind just

16   because other jurors see things differently or just to get the

17   case over with.  In the end your vote must be exactly that,

18   your own vote.  It is important for you to reach unanimous

19   agreement, but only if you can do so honestly and in good

20   conscience.

21        No one will be allowed to hear your discussions in

22   the jury room and no record will be made of what you say, so

23   you should all feel free to speak your minds.

24        Listen carefully to what the other jurors have to say

25   and then decide for yourself if the Government has proved the

1       Defendant guilty beyond a reasonable doubt.

2               If you decide that the Government has proved the

3       Defendant guilty then it will be my job to decide what

4       the appropriate punishment should be.  Deciding what the

5       punishment should be is my job and not yours and it would

6       violate your oaths as jurors to even consider the possible

7       punishment in deciding your verdict.  Your job is to look

8       at the evidence and decide if the Government has proved the

9       Defendant guilty beyond a reasonable doubt.

10              I have prepared a verdict form for you to use to

11      record your verdict in this case.  Now, the verdict form is

12      very simple.  It has the name of the case and the case number

13      and it has basically two options.

14              It says:  "As to the charge in the indictment we the

15      jury, by unanimous verdict, find the Defendant Gemar Morgan,"

16      and then there is a line that says "not guilty" and then there

17      is another line that says "guilty of possessing a firearm

18      after having been convicted of a felony."

19              If you reach unanimous agreement on one or the other,

20      check the appropriate box.  Your foreperson should sign the

21      verdict form, fill in the date, and then prepare a note that

22      says that the jury has reached unanimous agreement and then

23      notify the jury officer by activating the buzzer in the jury

24      room.

25              Your verdict will be received in open court and we

Jury Trial - Volume 2 - November 6, 2019

1   will bring you back into the courtroom to announce the verdict

2   once you have reached a final decision.

3          Remember that the Defendant is only on trial for the

4   particular crime charged in the indictment.  Your job is

5   limited to deciding if the Government has proved this crime

6   charged beyond a reasonable doubt.

7          Now, let me finish up by repeating something I said

8   to you earlier:  Nothing that I have said or done during this

9   trial was meant to influence your decision in any way.  You

10  decide for yourselves if the Government has proved the

11  Defendant guilty beyond a reasonable doubt.

12         Now, that concludes my instructions.  Right now

13  we will identify the foreperson -- I'm sorry -- identify the

14  alternate juror.  There are 13 you; only 12 will deliberate.

15  Once the alternate has been identified, I will ask the

16  alternate to remove his or her items from the jury room and

17  come into chambers to -- and I'll explain what your duties

18  are.

19         The alternate is still under the instructions not to

20  look things up, discuss the case or try to find anything out

21  on your own until after the jury has returned a verdict in

22  this case, because if deliberations continue and someone

23  becomes incapacitated or can't continue with the deliberations

24  the alternate will rejoin the jury and start deliberations

25  anew as a new jury of 12.

1      So, Ms. Pinkowski, would you identify the alternate,

2  please?

3     (Selection of alternate tendered to the Court.)

4      THE COURT:  Juror Number 12, Wendy Harris, you are

5  the -- Wendy Harris, you are the alternate juror.  So as soon

6  as all of you retire would you just grab your things and come

7  into chambers?  Very well.

8      When you go into the jury room hold off on beginning

9  deliberations until I send the verdict form in and the

10  exhibits and that will be your cue to start talking about the

11  case.

12      In the meantime, choose your foreperson, who will be

13  the individual who will send notes out and speak for you in

14  court.

15      Would you swear the jury officer, please?

16     (Jury officer sworn at 3:21 p.m.)

17      THE COURT:  Would you escort the jury out, please?

18      THE CLERK:  Absolutely.  All rise for the jury.

19     (Jury left courtroom at 3:21 p.m.)

20      THE COURT:  Does the Government have any objection to

21  the jury instructions as given?

22      MR. VAN WERT:  No, your Honor.  Thank you.

23      THE COURT:  Mr. Morgan, other than the objections you

24  made to the jury instructions earlier in the day, do you have

25  any further objections to the jury instructions?

Jury Trial - Volume 2 - November 6, 2019

 1              DEFENDANT MORGAN:  I already stated the objections
 2    that I already had.
 3              THE COURT:  All right.  Thank you.
 4              Does the Government have its exhibits ready in a
 5    binder for the jury?
 6              MR. VAN WERT:  We do, your Honor.
 7              THE COURT:  Did you take out the ones that were not
 8    offered?
 9              MS. ISON:  Yes, I did.
10              MR. VAN WERT:  We will check.
11              THE COURT:  There should be just 1, 3, 5, and 6;
12    right?
13              MS. ISON:  Yes.
14              MR. VAN WERT:  Yes, your Honor.  It is ready.
15              MS. RABEN:  Yes.
16              THE COURT:  All right.  If you will hand those up to
17    the marshal, please?
18              Can we have the exhibits, please?
19              MS. ISON:  Yes.  She is just checking off that they
20    were admitted on the revised exhibit list.
21              THE COURT:  All right.  If there is nothing further,
22    this matter will stand in recess.
23              We do have some other matters.  Would you give us
24    some room on the table, please?
25        (Recess taken from 3:25 p.m. to 4:33 p.m.)

```
 1              THE COURT:  The record should reflect that the
 2    parties and attorneys are present.  The jury is not present.
 3    I have a note from the jury that the jury has reached
 4    unanimous verdict.
 5              Is the Government ready for the verdict?
 6              MR. VAN WERT:  Yes, your Honor.  Your Honor, we are.
 7              THE COURT:  Mr. Morgan, are you ready for the
 8    verdict?
 9              DEFENDANT MORGAN:  One second.
10       (Discussion held off the record at 4:34 p.m.)
11              DEFENDANT MORGAN:  Yes.  Yes, your Honor.
12              THE COURT:  Very well.  Would you bring in the jury,
13    please?
14              THE CLERK:  All rise for the jury.
15       (Jury entered courtroom at 4:35 p.m.)
16              THE COURT:  You may be seated.
17              Members of the jury, I have a note from your
18    foreperson indicating that you have reached a unanimous
19    decision.
20              Will the foreperson please stand?
21              Mr. Gumpalli, has the jury reached a unanimous
22    verdict?
23              JURY FOREPERSON:  Yes, your Honor.
24              THE COURT:  Have you completed the verdict form?
25              JURY FOREPERSON:  Yes, we have.
```

1          THE COURT:  Did you sign and date it?

2          JURY FOREPERSON:  Yes, I have.

3          THE COURT:  Very well.  Would you hand the verdict

4    form to the clerk, please?  And you may be seated.

5       (Verdict tendered to the clerk.)

6          THE COURT:  Members of the jury, we're going to

7    publish the verdict in open court.  That means we will read

8    it into the record.  Please listen carefully because when --

9    after the verdict has been published I'm going to poll you by

10   asking each of you if it was your individual verdict, in order

11   to ensure unanimity for the record.

12          Would you publish the verdict, please?

13          THE CLERK:  As to the charge in the indictment, we

14   the jury, by unanimous verdict, find the Defendant Gemar

15   Morgan guilty of possessing a firearm after having been

16   convicted of a felony.

17          THE COURT:  Thank you.

18          Juror Number 1, Foreperson, Narasimha-Vineet

19   Gumpalli, was that and is that your verdict?

20          JUROR NUMBER ONE:  Yes, sir.

21          THE COURT:  Juror Number 2, Christin Hitsman, was

22   that and is that your verdict?

23          JUROR NUMBER 2:  Yes.

24          THE COURT:  Juror Number 3, Jody Thompson, was that

25   and is that your verdict?

Jury Trial - Volume 2 - November 6, 2019

```
 1              JUROR NUMBER 3:  Yes, your Honor.
 2              THE COURT:  Juror Number 4, Jennifer Nash, was that
 3   and is that your verdict?
 4              JUROR NUMBER 4:  Yes, your Honor.
 5              THE COURT:  Juror Number 5, Michele Larue, was that
 6   and is that your verdict?
 7              JUROR NUMBER 5:  Yes, your Honor.
 8              THE COURT:  Juror Number 6, Kenneth Dillaha, was that
 9   and is -- Dillaha?  Tell me.
10              JUROR NUMBER 6:  Yes, your Honor.  Dillaha.
11              THE COURT:  Dillaha.  Thank you.
12              Was that and is that your verdict?
13              JUROR NUMBER 6:  Yes, your Honor.
14              THE COURT:  Juror Number 7, Gregory Allen, was that
15   and is that your verdict?
16              JUROR NUMBER 7:  Yes, it was.
17              THE COURT:  Juror Number 8, Lisa Sikorski, was that
18   and is that your verdict?
19              JUROR NUMBER 8:  Yes.
20              THE COURT:  Juror Number 9, Todd Ridley, was that and
21   is that your verdict?
22              JUROR NUMBER 9:  Yes.
23              THE COURT:  Juror Number 10, Courtney Pulver, was
24   that and is that your verdict?
25              JUROR NUMBER 10:  Yes.
```

1           THE COURT:  Juror Number 11, Cristina Porea, was that

2    and is that your verdict?

3           JUROR NUMBER 11:  Yes, sir.

4           THE COURT:  And Juror Number 13, Chad Morgan, was

5    that and is that your verdict?

6           JUROR NUMBER 13:  Yes, sir.

7           THE COURT:  Very well.  The verdict indicates that

8    the jury was unanimous.  I'll instruct the clerk to file and

9    record the verdict.

10          Members of the jury, you are discharged from any

11   further obligation on your jury summons.  I'm going to ask you

12   to retire to the jury room and wait for me there for a few

13   moments and I'll have some conversation to have with you.

14          Would you escort the jury out?

15          THE CLERK:  All rise for the jury.

16      (Jury left courtroom at 4:38 p.m.)

17          THE COURT:  You may be seated.

18      (Discussion held off the record at 4:39 p.m.)

19          THE COURT:  Mr. Morgan, the jury has found you guilty

20   of the crime charged in the indictment.  The next thing

21   that will occur is the Probation Department will conduct a

22   presentence investigation.  A presentence investigation report

23   will be prepared.

24          As part of the investigation the Probation Office

25   will gather information from a variety of sources, including

 1    from you.  Ms. Raben will be present at the interview of you
 2    if you wish to have her there.
 3          You will have a limited period of time to file
 4    objections to the presentence report if you wish to do that.
 5    If the objections are not resolved with the probation officer,
 6    I'll rule on them at the sentence hearing.
 7          The sentence will take place on February 13 at 2:00
 8    in the afternoon.
 9          Ms. Raben, I'm going to ask you to notify the
10    Probation Department tomorrow morning of the results of the
11    trial and the sentencing date and schedule an interview of
12    Mr. Morgan, if you please.
13          MS. RABEN:  Yes, sir.
14          THE COURT:  Is there anything further from the
15    Government this afternoon?
16          MR. VAN WERT:  No, your Honor.  Thank you.
17          THE COURT:  Anything further from you, Mr. Morgan,
18    for today?
19          DEFENDANT MORGAN:  Oh, the appeal process, do I get
20    appeal papers?
21          THE COURT:  Well, not yet.  That doesn't happen until
22    sentencing.  You may appeal a final judgment, and the judgment
23    is the judgment of conviction and sentence.  And so when that
24    happens on February 13, you will have 14 days after that day
25    to file a notice of appeal.

```
 1              DEFENDANT MORGAN:  And would that be with the
 2     District Court?
 3              THE COURT:  You file the notice of appeal with the
 4     District Court Clerk, but the appeal will be to the Circuit
 5     Court.
 6              DEFENDANT MORGAN:  Okay.
 7              THE COURT:  All right?
 8              DEFENDANT MORGAN:  Thanks.
 9              THE COURT:  Any further questions, Mr. Morgan?
10              DEFENDANT MORGAN:  No, your Honor.
11              THE COURT:  All right.  Is there anything further,
12     then?
13              Hearing nothing, you may recess court.
14              THE CLERK:  All rise.  Court is now in recess.
15                  (Proceedings adjourned at 4:41 p.m.)
16                         *       *       *
17
18                  CERTIFICATE OF COURT REPORTER
19
20         I certify that the foregoing is a correct transcript
21      from the record of proceedings in the above-entitled matter.
22
23         s/ Rene L. Twedt                    June 26, 2020
       RENE L. TWEDT, CSR-2907, RDR, CRR, CRC      Date
24        Federal Official Court Reporter
25
```